**UNIVERSAL SEWING MACHINE CO., Inc., Plaintiff,**

v.

**STANDARD SEWING EQUIPMENT CORPORATION, Defendant.**

United States District Court
S. D. New York.
July 8, 1960.

258

Henry L. Burkitt, New York City, for plaintiff.

Gordon, Brady, Caffrey & Keller, New York City, for defendant. Leroy C. Curtis and James V. Joy, Jr., New York City, of counsel.

THOMAS F. MURPHY, District Judge.

The parties to this trademark controversy are both New York corporations and the plaintiff has no registered mark.

Although the action has been pending for almost eight years defendant made no motion to test the sufficiency of plaintiff's claim or the court's jurisdiction until the first day of trial. We reserved decision on the motion and tried the case on the merits.

Plaintiff's complaint seeks four different forms of relief: (1) a declaratory judgment declaring its prior right to the trademark "Universal" for which defendant has procured registration in the Patent Office under the provisions of the Lanham Act, 15 U.S.C.A. §§ 1051–1127; (2) to enjoin defendant from further use of that mark; (3) damages for infringement and unfair competition, and (4) to cancel defendant's federal registration of the said mark.

██ Since the declaratory judgment prayed here seeks to vindicate plaintiff's common law rights inhering in its trade name (we will assume that plaintiff used its name as a common law trademark) that claim, not based on a federal right, is not independently enforceable in this court. And even if we construe that claim as one to declare defendant's federal registration invalid, similarly as with respect to patents, the same result would obtain because of the absence of a justiciable controversy, i. e., defendant has never threatened plaintiff, directly or indirectly, or in any manner, with litigation. Cf. Eastman Kodak Co. v. Velveray, D.C.S.D.N.Y.1959, 175 F. Supp. 646.[1] Neither could the claims for infringement, unfair competition, or for an injunction stand by themselves jurisdictionally under the facts disclosed herein. The only colorable basis for federal district court jurisdiction to be found under the complaint is with regard to the suit for cancellation. But after analyzing the statutes and cases construing them, we are of the opinion that, absent some other basis of jurisdiction, a suit for cancellation by one in plaintiff's position may not be independently maintained in this court.

██ Section 14 of the Lanham Act, 15 U.S.C.A. § 1064, provides in part that, "Any person who believes that he is or will be damaged by the registration of a mark on the principal register * * *, may upon the payment of the prescribed fee, apply to cancel said registration * * *." Section 39 of that Act, 15 U.S.C.A. § 1121, provides for jurisdiction in the district courts "of all actions arising under this chapter, without regard * * * to diversity or lack of diversity of the citizenship of the parties." Section 14, together with § 21, 15 U.S.C.A. § 1071, would seem to require that the aggrieved party's remedy of cancellation must be sought in the administrative tribunals of the Patent Office and then, if unsuccessful, by appeal to the Court of Customs and Patent Appeals, or in the alternative, to then proceed in the district court under §§ 145, 146 of Title 35.[2] In other words, one seeking cancellation offensively and relying solely upon that claim for federal jurisdiction would seem to be relegated to first exhausting his administrative remedies before resorting to the courts. Such a situation, exemplified by the instant action, must be distinguished from the cases where there is present some independent basis of federal jurisdiction, and wherein the validity of a registered trademark is brought into issue, for example, by

---

1. Plaintiff here is not exposed to any infringement action since defendant concedes the prior use and right of plaintiff to continue the use of its corporate trade name. Cf. King Kup Candies, Inc. v. H. B. Reese Candy Co., D.C.D.Pa. 1955, 134 F.Supp. 463, on reargument D.C., 140 F.Supp. 115, and Magic Foam Sales Corp. v. Mystic Foam Corp., 6 Cir., 1948, 167 F.2d 88, 90–91. In our opinion the controversy between the parties as to which of them has the prior right to registration of the mark "Universal," now pending in the Patent Office Interference proceeding, does not satisfy the requisites of a justiciable controversy ripe for federal court jurisdiction.

2. See e. g., Nehi Corp. v. Mission Dry Corp., D.C.D.Del.1953, 117 F.Supp. 116; Viscol Co. v. Socony-Vacuum Oil Co., Inc., D.C.S.D.N.Y.1950, 90 F.Supp. 499; Stern Apparel Corp. v. Raingard, Inc., D.C. S.D.N.Y.1949, 87 F.Supp. 621.

way of defense (Bascom Launder Corp. v. Telecoin Corp., 2 Cir., 1953, 204 F.2d 331, 335) or counterclaim. See, e. g., Avon Shoe Co. v. David Crystal, Inc., D.C.S.D.N.Y.1959, 171 F.Supp. 293, 297, affirmed 2 Cir., 1960, 279 F.2d 607. The issue may arise also as in the case of Simmonds Aerocessories v. Elastic Stop Nut Corp., 3 Cir., 1958, 257 F.2d 485. There there was diversity of citizenship present, the monetary prerequisite involved, and a justiciable controversy because the defendant therein had in effect threatened the plaintiff with litigation for infringement of defendant's registered trademark. Plaintiff there, as here, had no registered mark and sought, inter alia, cancellation of defendant's registration. The Court of Appeals in Simmonds said that the administrative remedies were concurrent with those provided in § 37 of the Lanham Act, 15 U.S.C.A. § 1119, which provides as follows: "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and shall be controlled thereby." We agree with the result in that case but not with the statement that the remedies of § 14 and § 37 are concurrent if that were taken to mean as is here contended, that an original suit may be instituted by one in the position of the present plaintiff, in the district court for cancellation of another's federal registration where no other basis of jurisdiction is present. Compare the cases cited by that court in support of its statement (at page 491) and also the cases cited in Note 2, supra. In our view § 37 assumes a properly instituted and otherwise jurisdictionally supportable action involving a registered mark. That not being the case here, we are without jurisdiction of the subject matter and upon that ground we must dismiss the complaint.

However, upon the assumption that we may be in error in that disposition, we will proceed to determine the merits and and we will assume that we have pendent jurisdiction of all the claims with the exception of that seeking a declaratory judgment. As to that claim there is a complete absence of a justiciable controversy.

Plaintiff was incorporated in 1935 and is wholly owned by its president and secretary, Morris Shapiro. Although Shapiro has been in the sewing machine business since 1910, substantially all of plaintiff's business is in rebuilding used sewing machines, principally industrial machines used in the canvas and awning trade. Its source of supply is various secondhand dealers. It buys, sells and rents machines, and also repairs them and sells parts and accessories. Plaintiff's letterhead lists ten different brands of machines it deals in, including Singer, Merrow, Union Button Sewer, etc. It has never handled machines with only the trademark "Universal." All of plaintiff's sales, repairs or rentals are conducted at its sole place of business in Manhattan. After a sale is made, or a machine repaired or rented, and while in the shipping room, plaintiff affixes to such machine its decalcomania (decal) bearing its corporate name, address and telephone number. This decal is affixed to show the name of plaintiff as the dealer as distinguished from the brand name of the original manufacturer which is left intact on the machine. The decal also serves to advertise plaintiff as well as for ready reference by the purchaser in the event repairs are needed. Plaintiff's sales of new home sewing machines total about 22 since 1949, and many of those were procured specially by plaintiff to fill some customer's order. The extent of advertising done by plaintiff is encompassed in the New York City classified telephone directory and in two trade journals, Fraser's Canadian Textile Directory and The National Canvas

Review. The cost of this advertising approximates $300 per year.

Prior to defendant's formation in 1947, its president and presently sole shareholder, together with one Harry Kron, formed a Massachusetts corporation of the same name as defendant, which conducted a secondhand reconditioning and sales business of used home sewing machines. It moved to New York in 1947, formed defendant and began importing new home sewing machines from England and then Italy. The Massachusetts corporation was dissolved and the business of the defendant was thereafter confined to the field of new home machines. The Italian machines bore the name "Universale," which name, prior to importation and at defendant's direction, was Americanized to "Universal." Defendant's imports are now solely from manufacturers in Japan. Defendant's business consists of the distribution and sale, nationally and in some foreign countries, of a complete line of new home sewing machines under the trademark "Universal." Besides New York, it has branch offices in Chicago and Los Angeles. Defendant imports the machine heads and then assembles them with cabinets and motors and sells wholesale to jobbers and retail outlets which in turn sell to the ultimate consumers. Since May 1955, pursuant to an order of the Federal Trade Commission, defendant has used its corporate name in connection with the mark "Universal." Defendant's advertising is modest but more extensive than plaintiff's. That evidence was limited to the years 1955–1959. The average cost from 1955 to 1957 was $20,000, and in 1958 and 1959 it averaged $30,000. It appeared that defendant placed advertisements in magazines such as Vogue, McCall's and Good Housekeeping, in trade journals, telephone directories, and in 1949 in the New York Sunday News, and in 1952 in the Daily News. Defendant's first advertisement in the New York Classified Directory was in 1949. Plaintiff's objection to the publisher resulted in the discontinuance of that listing until 1954. It appeared also that there was much advertising of the "Universal" sewing machine by defendant's dealers for which defendant did not have to contribute.

It is undisputed that defendant applied for federal registration of the mark "Universal" in October 1948; that in 1949 defendant succeeded in a Patent Office proceeding in effecting, on grounds of abandonment, the cancellation of the registration of that same mark which had been issued to the White Sewing Machine Company in 1933, and that defendant's registration was granted on April 4, 1950. Plaintiff, after notice of the forthcoming registration and unable to arrest its issuance, applied itself to the Patent Office for registration of the same mark on March 30, 1950. Interference proceedings were set up subsequently upon plaintiff's demand, and after the filing of this suit in December 1951, were suspended pending its outcome.

We are of the opinion that plaintiff cannot succeed upon any of the claims asserted. We are satisfied from the evidence and exhibits in this case that defendant had no intention of poaching on the good will of plaintiff, or to divert plaintiff's customers to itself. It did not, nor intend to, palm off its goods as those of the plaintiff. The situation here is quite the reverse of that. The fact is, and concededly so, that the parties are not competitors and it does not appear that plaintiff ever attempted or intended to expand into the new home sewing machine field. Nor do we believe defendant adopted the mark "Universal" consciously and deliberately knowing of plaintiff's existence. Notwithstanding these facts, we are mindful that defendant would not necessarily be protected against an action for infringement or cancellation if in fact there existed deceiving potential or confusing similarity between its adopted mark and plaintiff's corporate trade name. Cf. Best & Co. v. Miller, 2 Cir., 1948, 167 F.2d 374; LaTouraine Coffee Co., Inc. v. Lorraine Coffee Co., Inc., 2 Cir., 1946, 157 F.2d 115, 118. Section 2 of the Lanham Act, 15 U.S.C.A. §

1052(d), would preclude registration of a trademark if it "Consists of or comprises a mark which so resembles a mark * * * or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers." Since it is not disputed that plaintiff had long prior to defendant used its corporate title, we must inquire into the question of likelihood of confusion.

■ The test for likelihood of confusion, to determine plaintiff's right to cancellation here, is the same applied in actions for infringement or unfair competition, viz., "whether the second-comer's name, mark or make-up is close enough to the first-comer's to make it likely that those who deal with the first will understand that the first is the source of goods in fact emanating from the second." Artype, Inc. v. Zappulla, 2 Cir., 1956, 228 F.2d 695, 697. Under this confusion of source criterion, it is sufficient if defendant's products are similar enough to plaintiff's to be likely to mislead purchasers into thinking that its products were manufactured or sold by plaintiff. Admiral Corp. v. Penco, Inc., 2 Cir., 1953, 203 F.2d 517, 520.

■ This possibility or likelihood of confusion it would seem must exist prior to or at the time a customer purchases the goods. Under the circumstances and evidence of this case we find no such possibility or likelihood exists. There is no evidence here of any instance of a purchaser buying defendant's product in the belief that it was plaintiff's. A purchaser who deals with and is familiar with the plaintiff and the nature of its business, in our opinion, will not be confused or misled to believe that defendant's line of new home sewing machines originates with plaintiff. With one who is not familiar with plaintiff, likelihood of being misled or confused is even more remote. Clearly, in no sense has the word "Universal" become so allied with plaintiff as to create a secondary meaning for the term. Cf. Landers,

Frary & Clark v. Universal Cooler Corp., 2 Cir., 1936, 85 F.2d 46.

After a purchase has been made from defendant or one of its distributors or retailers, and when repairs or parts are sought, there is a possibility that plaintiff may be carelessly mistaken as the ultimate source of the goods theretofore purchased, but in the majority of cases only then if the customer has to resort to a New York City telephone directory to find the location of a repair shop or outlet handling sewing machine parts or dealing in repair services and even this possibility has been reduced to the minimum since 1955 when defendant was required to place its corporate name on its trademarked machines. The evidence submitted by plaintiff on the issue of confusion by customers consisted of letters and telephone calls. There were some 70 letters received between 1950 and 1959 from people in 14 different states and various parts of New York seeking to obtain parts, repairs or information regarding the purchase or instructions for the operation of "Universal" home sewing machines. Plaintiff admits that one-fourth of these were written at its suggestion to people who telephoned first for the information. The telephone calls indicating confusion were noted in a special memorandum book kept by plaintiff starting in April 1952, after this case had been instituted. The entries were made therein by plaintiff's bookkeeper, who did not testify, and assuming the book was properly in evidence under 28 U.S.C.A. § 1732, it indicates generally that some four to five calls per day came in between May and October, 1952; six calls in November 1952, and four calls in December 1952. In 1953 there were a total of 22 calls; in 1954 there were seven; two in 1955; three in 1956; 28 in 1957; 12 in 1958, and in 1959 there were five calls. All of these callers, the plaintiff's president testified, sought the same information as the letter writers and in addition there are numerous among them alleged to be complaints as to the performance of the callers' machines. None of the writers or callers

had previously had any connection with plaintiff. We have serious doubts as to the accuracy of the entries and their trustworthiness but even accepting this evidence, in context, it does not in our opinion add up to confusion in the legally accepted sense of that term necessary to a holding that would require defendant's registration to be cancelled or to sustain the assertion of claims of infringement or unfair competition. Cf. Parfumerie Roger & Gallet v. M.C.M. Co., Inc., 2 Cir., 1928, 24 F.2d 698. Thus a finding of an absence of confusion at the critical times, and in effect lacking altogether, is further justified in a situation such as this where the parties do not in fact compete, where admittedly no loss of customers has occurred in a period extending over ten years, and particularly where the mark, in no sense fanciful, (cf. France Milling Co. v. Washburn-Crosby Co., 2 Cir., 1925, 7 F.2d 304, 306), consists solely of a simple common word that has been in the public domain since time immemorial.[3]

Plaintiff, relatively unknown to the purchasing public and serving a different market than defendant (one used industrial sewing machines and the other new machines for the home) and confusion presently possible only in the sense that inadvertence or mistake must be anticipated even with ordinarily prudent purchasers—certainly not likely here from an appreciable number—has failed to persuade us upon any of the claims asserted and the complaint should be dismissed accordingly.

Submit decree.

This opinion is filed in lieu of findings of fact and conclusions of law.

3. In the F.T.C. proceeding wherein defendant was a respondent, Paragraph Twelve of the Findings of Fact, incorporated into the final order of the Commission, dated May 2, 1955, contained the following: " * * * respondents have shown there are some 256 listings in the Manhattan telephone directory of corporations or organizations part of whose business name is the word 'Universal' and some 85 similar listings in the Philadelphia telephone directory; that the U. S. Patent Office has issued trade-mark registrations to 64 business concerns throughout the country for the brand name 'Universal' of which * * three, other than respondents, are to concerns using such trade names on sewing machines * * * " But cf. Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 1936, 85 F.2d 46.