**JEFFREY BANKS, LTD.**

v.

**JOS. A. BANK CLOTHIERS, INC.**

**Civ. No. JH–83–2043.**

United States District Court,
D. Maryland.

July 17, 1985.

John H. Lewin, Jr. and Venable, Baetjer & Howard, Baltimore, Md., Arthur J. Greenbaum, Mary A. Donovan, and Cowan, Liebowitz & Latman, P.C., New York City, for plaintiff.

Paul Mark Sandler, Thomas C. Swiss and Freishtat & Sandler, Baltimore, Md., Philip J. Crihfield, Linda J. Chiron and Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

JOSEPH C. HOWARD, District Judge.

On June 16, 1983, Jeffrey Banks, Ltd. (plaintiff) [1] brought suit against Jos. A. Bank Clothiers, Inc. (defendant) [2] seeking a declaratory judgment [3] that it has a right to use the unregistered trademark "Jeffrey Banks" in commerce on various articles of clothing. [4] Confronting the Court is defendant's motion to dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. Fed.R.Civ.P. 12(b)(1) and (6).

### I.

On October 19, 1981, plaintiff, a designer of men's and boys' clothing, filed an application to register the trademark "Jeffrey Banks" for various articles of clothing (Complaint, Exhibit A). Approximately nine months later, Gerald T. Shekleton, an attorney employed by The Quaker Oats Company (defendant's parent company) wrote plaintiff's president alleging that the use of that mark "violate[d] Jos. A. Bank's rights under Title 15, Section 1114 of the United States Code," and in addition, "constitute[d] a false representation of affil-

1. Jeffrey Banks, Ltd. is a New York Corporation with its principal place of business in New York (Complaint, at 1).

2. Jos. A. Bank Clothiers, Inc. is a Delaware corporation with its principal place of business in Baltimore, Maryland (Complaint, at 2).

3. 28 U.S.C. § 2201; Fed.R.Civ.P. 57.

4. Additionally, plaintiff "demands" that the Court:

(ii) permanently enjoin any further threats of infringement by defendant or anyone act-

ing in concert or participation with defendant;

(iii) direct the defendant to withdraw, with prejudice, its opposition to plaintiff's mark ...;

(iv) award [it] any and all damages sustained ... as a result of defendant's wrongful acts;

(v) award [it] ... reasonable attorneys fees together with the costs and disbursements in this action; and

(vi) grant [it] such other and further relief as th[e] Court may deem just (Complaint, at 5).

iation or association under Title 15, Section 1125(a) of the United States Code" (*id.*, Exhibit B).[5] Mr. Shekleton concluded his letter by stating:

Your adoption of a confusingly similar trademark for use in connection with the sale of clothing will lead to confusion, if it has not already, unless you discontinue use of this name. Please send us your immediate written assurances that you will take immediate steps to case [sic] and desist from all use of the trademark "JEFFREY BANKS" in connection with the sale of clothing so that further harm to Jos. A. Bank's rights may be avoided. If you have any questions, please call us (*id.*).

On July 16, 1982, plaintiff's attorney responded to defendant's letter. In a nutshell, he asserted that plaintiff had the right to use the "natural name" of its founder and owner and that the names "Jos. A. Bank" and "Jeffrey Banks" were "strikingly dissimilar" and unlikely to engender any confusion with the public.

The Patent and Trademark Office accepted plaintiff's application and its trademark appeared in the Official Gazette on October 12, 1982. On January 20, 1983, defendant filed a notice of opposition to the proposed registration of plaintiff's trademark (*id.* Exhibit D).[6] Four months later, plaintiff formally responded to defendant's opposition (Defendant's Motion to Dismiss, Affidavit of Michael T. Welch, Exhibit # 2).

On May 20, 1983, plaintiff's president wrote to William Smithburg, the president of The Quaker Oats Company. He expressed concern over the "attempt" by Mr. Smithburg's company "to prevent [him]

from using [his] own name in connection with [his] business ..." (Plaintiff's Response to Memorandum in Support of Defendant's Motion to Dismiss, Exhibit B). Specifically, Mr. Banks stated:

I find it destressing [sic] and unfair that your company would pursue this now and expect me to stop using my own name. There are many designers and manufacturers in the clothing field with the same or similar last names: Anne Klein, Calvin Klein, Bobbie Brooks, Donald Brooks, Cathy Hardwick and Hardwick Clothes for example. Similarly [sic] my name and the name of your subsidiary have co-existed without confusion in the clothing area for several years, and without harm to either party (*id.*).

In closing, Mr. Banks requested Mr. Smithburg to intercede and "review all aspects of [the] situation[,]" so that they "[could] both continue business as usual" (*id.*).

On June 1, 1983, Mr. Smithburg responded. He reiterated his company's concern over plaintiff's use "of the similar mark 'Jeffrey Banks[,]'" adding that if plaintiff's "advertising agency should accidentally advertise under the mark 'J. Banks' or 'Banks,' the likelihood of confusion between the two marks would greatly increase" (Defendant's Motion to Dismiss, Affidavit of Michael T. Welch, Exhibit # 4). Finally, Mr. Smithburg noted that attorneys for both sides were working on a settlement and that he was "confident ... some form of amicable resolution c[ould] be reached" (*id.*).

The settlement discussions did not bear fruit and on June 17, 1983, plaintiff filed

---

**5.** On December 15, 1981, the "United States Patent Office issued a federal trademark registration to defendant ... for JOS. A. BANK, Registration No. 1,182,109 (Int. Class 25), for clothing, claiming first use in 1945 (Complaint, Exhibit D). An application to register the mark for retail and mail order services was filed on April 30, 1982, Serial No. 362,504, claiming first use in 1957" (Defendant's Motion to Dismiss, at 2).

**6.** In its Notice of Opposition defendant claimed that

[a]s a result of the similarity of [plaintiff's] mark and JAB's JOS. A. BANK mark in appearance, sound, connotation and commercial impression, coupled with the similarity of the goods and services, [plaintiff's] use in commerce of its mark has and will continue to damage JAB as such use is likely to cause confusion, deception and mistake in the minds of the public with respect to the origin and source of its goods (Complaint, Exhibit D, Opposition No. 67–180, at 2–3).

suit. On October 24, the Trademark Trial and Appeal Board granted plaintiff's motion to stay the proceedings before the Board pending the resolution of this action.

## II.

██ Defendant argues that this action should be dismissed for lack of subject matter jurisdiction.[7] Specifically, defendant contends that its "statements or conduct [could not] creat[e] a well grounded fear or reasonable apprehension on plaintiff's part that it would face an infringement suit or the threat of one if it continued its activities with respect to its products" (Defendant's Motion to Dismiss, at 6). Therefore, since there is no actual controversy the Court lacks subject matter jurisdiction over this action.

Naturally, plaintiff disagrees with this assessment. In support of its position, plaintiff argues that "defendant has, by a letter sent long before the institution of the opposition proceeding, accused plaintiff of trademark infringement and demanded that plaintiff stop using his own name and mark; it has attempted to negotiate restraints on plaintiff's use of its name and mark; and, it has, by its conduct against other entities using a form of 'bank(s)' as part of a trademark indicated a likelihood that it will not be content merely with a determination that plaintiff's mark is unregistrable ..." (Plaintiff's Response to Memorandum in Support of Defendant's Motion to Dismiss, at 14–15). These actions, plaintiff contends, "combined with

defendant's notice of opposition, are legally sufficient to establish a justiciable controversy" (*id.* at 15).

## III.

Article III, Section 2 of the Constitution extends federal judicial power to "cases" and "controversies" of various types. The Declaratory Judgment Act which provides additional judicial relief,[8] where jurisdiction is otherwise present, incorporates the constitutional requirement for it applies only in "a case of actual controversy." 28 U.S.C. § 2201.[9]

██ The test to apply in determining whether there is an "actual controversy" is a familiar one. As observed by the Court in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941):

> the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 273, 61 S.Ct. at 512 (citation omitted); *accord Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). *See generally Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Finally, "whether particular facts are sufficiently immediate and real to make an actual controversy is something that must be worked out on a case-by-case basis." 10A C. Wright, A. Miller & M. Kane,

7. When a motion under Fed.R.Civ.P. 12 is "based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 548 (1969) (footnote omitted); *accord Jones v. Georgia*, 725 F.2d 622 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 380, 83 L.Ed.2d 316 (1984). In doing so, the Court may consider matters outside the pleadings. *Mims v. Kemp*, 516 F.2d 21, 23 (4th Cir.1975); *accord Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982).

8. The Act "gives a means by which rights and obligations may be adjudicated in cases involv-

ing an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so" 10A C. Wright, A. Miller, & M. Kane, *supra* n. 7, § 2751, at 569 (footnote omitted).

9. "The standard for finding a justiciable 'case or controversy' in a declaratory judgment action is no less demanding than the standard in any other type of action." *Keene Corp. v. Insurance Co. of North America*, 215 U.S.App.D.C. 156, 162, 667 F.2d 1034, 1040 (1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) (citations omitted).

*supra* n. 7, § 2757, at 580 (footnote omitted).

In trademark cases, the "actual controversy" requirement is met if plaintiff can show "a real and reasonable apprehension that he will be subject to liability" if he continues marketing his product. *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir.1982) (quoting *Societe de Conditionnement v. Hunter Engineering Co.*, 655 F.2d 938, 944 (9th Cir. 1981).[10] Put another way, "it is sufficient if defendant's actions create in plaintiff a 'reasonable apprehension' of being sued for infringement." 2 J. McCarthy, *Trademarks and Unfair Competition* § 32.18, at 710 (2 ed. 1984) (footnote omitted).[11] Moreover,

> [a] threat of infringement does not have to be said in so many words. It can be expressed in the attitude of defendant as expressed in 'circumspect language' in a letter. Even in the absence of direct charges of infringement against plaintiff by defendant, an 'actual controversy' can be found if the commercial realities of the situation puts plaintiff in a position where it must run a real risk of potential liability if it goes ahead to exercise what it believes are its legal rights in the commercial market.

*Id.* at 710–11 (footnotes omitted); *accord* 1 J. Gilson, *Trademark Protection and Practice* § 8.03[2], at 8–19—8–20 (1984 ed.).

The record in this case, the Court concludes, supports a finding that there exists an actual controversy. Mr. Shekleton's letter of July 9 alerted plaintiff that the use of its mark "violate[d] Jos. A. Bank's rights" under 15 U.S.C. § 1114 and "constitute[d] a false representation of af-filiation or association" under 15 U.S.C. § 1125(a) (Complaint, Exhibit B). Furthermore, it directed plaintiff to "send ... immediate written assurances that it w[ould] take immediate steps to case [sic] and desist from all use of the trademark 'JEFFREY BANKS' in connection with the sale of clothing ..." (*id.*). Plaintiff responded to this letter and several months later discovered that defendant had filed an opposition to its published mark. The parties attempted, without success, to settle their dispute. This failure resurrected the threatening shadow of the July 9th letter, made more ominous by the notice of opposition. Desirous of clarifying its rights, plaintiff filed suit.

Having determined, then, that defendant's actions created, in plaintiff, a reasonable apprehension of an infringement suit, "[i]t ... becomes necessary to establish one of the usual bases of jurisdiction." 10A A. Wright, A. Miller, & M. Kane, *supra* n. 7, § 2766, at 735. Here, diversity jurisdiction, 28 U.S.C. § 1332, as well as federal question jurisdiction under the Lanham Act are present. *Apex Beauty Products Manufacturing Corp. v. Brown Shoe Co.*, 209 F.Supp. 73, 74 (S.D.N.Y.1962); *see* J. Gilson, *supra*, § 8.03[2], at 8–18.1—8–19. Now, to defendant's Rule 12(b)(6) challenge.

## IV.

It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted); *accord Harrison*

---

**10.** The "reasonable apprehension" test is also used in patent disputes. *See, e.g., Sweetheart Plastics, Inc. v. Illinois Tool & Works, Inc.*, 439 F.2d 871, 874 (1st Cir.1971).

**11.** A justiciable controversy, however, is not created simply by the filing of an opposition to plaintiff's trademark application in the Patent and Trademark Office. *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125–26 (2d Cir.1963); *Merrick v. Sharpe & Dohme, Inc.*, 185 F.2d 713,

717–18 (7th Cir.), *cert. denied*, 340 U.S. 954, 71 S.Ct. 573, 95 L.Ed. 687 (1951); *American Brahmental Ass'n. v. American Simmental Ass'n*, 443 F.Supp. 163, 165 (W.D.Tex.1977); *Acme Feed Mills, Inc. v. Quaker Oats Co.*, 313 F.Supp. 1156, 1158 (M.D.N.C.1970); *see Red Lobster Inns, Inc. v. New England Oyster House, Inc.*, 378 F.Supp. 1144 (S.D.Fla.1974), *aff'd*, 524 F.2d 968 (5th Cir.1975).

*v. KVAT Food Management, Inc., et al.,* 766 F.2d 155 (4th Cir.1985); *Caddell v. Singer,* 652 F.2d 393, 394 (4th Cir.1981). "The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in [its] behalf, the complaint states any valid claim for relief." 5 C. Wright & A. Miller, *supra,* n. 7, § 1357, at 601 (footnotes omitted). In this case, the complaint comfortably passes the test.

Accordingly, it is this 17th day of July, 1985,

ORDERED:

1) that defendant's motion to dismiss the complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim is DENIED; and

2) that the Clerk mail copies of this Memorandum and Order to counsel for the parties.