THOMPSON MEDICAL COMPANY,
INC., Plaintiff,

v.

NATIONAL CENTER OF NUTRITION,
INC., Defendant.

No. 89 Civ. 3095 (CSH).

United States District Court,
S.D. New York.

Aug. 31, 1989.

Curtis, Mallet–Prevost Colt & Mosle, New York City, for plaintiff; Eliot Lauer, Daniel R. Lenihan, Miriam K. Harwood, of counsel.

Fitzpatrick, Cella, Harper & Scinto, New York City, for defendant; Lawrence F. Scinto, William D. Stokes, Alexandria, Va., of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is a federal trademarks case in which state law claims are also asserted. Plaintiff Thompson Medical Company, Inc. ("Thompson") is a New York corporation maintaining its principal place of business in New York City. Since 1978 Thompson has marketed and sold in retail stores nationwide a line of meal replacement diet products under the registered trademark SLIM–FAST. In early 1988 Thompson introduced and began to market a related product called Ultra SLIM–FAST. These products are advertised together as well as individually. The labels are nearly identical, and they are sold side-by-side on retail store shelves.

Defendant National Center of Nutrition, Inc. ("NCN") is a Virginia corporation with its principal place of business within that state. NCN owns the registered trademark ULTRAFAST on protein-sparing, modified dietary food supplement products and weight loss programs. NCN's weight loss program is physician supervised. NCN sells the program exclusively to physicians and hospitals. The physicians and hospitals then administer the program.

NCN's ULTRAFAST products and programs are not available to consumers in retail stores.

In April 1989 NCN mailed letters to Thompson and three of Thompson's major consumers, the nationwide store chains of Walgreen Drugs, Fantles's Drugstore, and Giant Food. NCN claimed in those letters that Thompson's mark Ultra SLIM–FAST infringed upon NCN's ULTRAFAST trademark. NCN demanded that Thompson and all three chain stores cease and desist from selling Ultra SLIM–FAST and that the stores remove the product from their shelves. NCN also stated that unless the stores complied with those demands, they would be named as co-defendants in legal actions commenced by NCN against Thompson.

Reacting to those letters, Thompson filed in this Court on May 5, 1989 an action for declaration of non-infringement. Thompson also asserted claims for damages for unfair competition, trade disparagement and tortious interference with contract as a result of NCN's allegedly false and threatening letters to Thompson's customers.

On June 9 1989, NCN filed an action in the Eastern District of Virginia against Thompson and the Fantle and Giant Food store chains for trademark infringement.

The case is now before this Court on Thompson's motion for an order enjoining what it characterizes as NCN's duplicative action in the Eastern District of Virginia; and NCN's cross-motion under Rule 12(b)(2), F.R.Civ.P., to dismiss Thompson's action against it for lack of personal jurisdiction.

The relief Thompson seeks on its motion, an order staying NCN's second-filed Virginia action, is a form of preliminary injunctive relief to which Thompson is not entitled unless it demonstrates in this Court personal jurisdiction over NCN. *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757 (2d Cir.1983).

■ If personal jurisdiction over NCN exists, then Thompson is clearly entitled to that injunctive relief. Thompson filed its action in this Court one month before NCN filed an action involving the identical issue of infringement *vel non* in Virginia. An action for declaratory judgment of non-infringement is a recognized trademark remedy. *See, e.g., Carter–Wallace, Inc. v. Ever–Dry Corporation,* 290 F.Supp 735 (S.D.N.Y.1968) (Mansfield, J.). It is the settled law of this circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second. *First City National Bank and Trust Company v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989), and cases cited. NCN in its briefs does not suggest the existence of any circumstances taking the case at bar outside that rule. To implement the rule, the court of first filing has the equitable power to stay the second-filed suit, even in another district. *Carter–Wallace, Inc. v. Ever–Dry Corporation, supra.*

■ Thus the cross-motions turn upon the question of personal jurisdiction in this Court over NCN. It is Thompson's burden to demonstrate personal jurisdiction by a preponderance of the evidence. *First City National Bank and Trust Company v. Simmons, supra,* at 79. Where as here a plaintiff seeks preliminary injunctive relief, it must make more than a *prima facie* showing of personal jurisdiction over the defendant. *Beacon Enterprises v. Menzies, supra,* at 768.

■ The parties have conducted expedited discovery on this issue. Having considered the deposition and documentary evidence, including NCN's amended answers to Thompson's interrogatories sworn to on August 22, 1989, I conclude that Thompson has made more than a *prima facie* showing that NCN is subject to jurisdiction in New York. NCN's marketing effort is nationwide. New York State is a promising source of overweight citizens and physicians and hospitals who treat them. The evidence reveals NCN's advertising campaign in 21 nationally disseminated publications, which together with a toll free nationwide telephone number and other marketing devices have generated revenues from New York representing about 8.5% of NCN's total nationwide sales. New York callers account for 12% of the total nation-

254

wide calls to NCN's toll free "800" number. NCN has prepared a lengthy feasibility study for at least one New York hospital, and has dispatched sales representatives to New York on a number of occasions to solicit the business of hospitals located within the state. Solicitation of this degree of sophistication generating revenue from New York customers in these amounts is sufficient to constitute the doing of business by NCN within New York State under N.Y. CPLR § 301. To NCN's solicitation within New York State (together with the other states of the Union) and the significant New York revenues generated thereby, the personal visits of NCN representatives upon a number of occasions to targeted hospitals in New York must be added. That is sufficient, for although the New York cases adhere to the "solicitation-plus" rule ... "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business'" *Aquascutum of London v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970) (citing New York cases). "[W]hen there are activities of substance in addition to solicitation there is presence and, therefore, jurisdiction." *Laufer v. Ostrow*, 55 N.Y.2d 305, 311, 449 N.Y.S.2d 456, 459, 434 N.E.2d 692 (1982). Plaintiff at bar makes that showing. The facts in *Beacon Enterprises, Inc. v. Menzies, supra*, upon which NCN relies, are inapposite.

In addition, I agree with Thompson that in respect of its tort claims, jurisdiction over NCN is properly founded under CPLR § 302(a)(3). The issue of infringement is central to those claims, so that NCN's Virginia action is equally duplicative as to them.

For the foregoing reasons, NCN's cross-motion is denied, and Thompson's motion to stay the action brought in the Eastern District of Virginia is granted. Counsel for the parties are directed to attend a status conference in Room 307 at 2:30 p.m. on October 6, 1989.

It is SO ORDERED.