**MOOG CONTROLS, INC., Plaintiff,**

v.

**MOOG, INC., Defendant.**

**No. 96–CV–74C.**

United States District Court,
W.D. New York.

May 7, 1996.

428

Hodgson, Russ, Andrews, Woods & Good-
year (Robert J. Lane, of counsel), Buffalo,
New York, for Plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber
(Joseph V. Sedita, of counsel), Buffalo, New
York, for Defendant.

### DECISION and ORDER

CURTIN, District Judge.

Plaintiff Moog Controls Inc. ("MCI") is a
Delaware corporation with its principal office
in East Aurora, New York. Defendant
Moog, Inc. ("Moog") is a New York corpora-
tion with its principal office also in East
Aurora. Plaintiff brings this action pursuant
to the Lanham Act, 15 U.S.C. § 1121, and
pursuant to this court's supplemental juris-
diction, conferred by 28 U.S.C. § 1367.

Prior to 1987, MCI was owned by Moog
and was operated as a division under the
name "Domestic Industrial and Automotive
Services" Division of Moog, Inc. The divi-
sion was in the business of designing manu-
facturing and servicing electrohydraulic ser-
vovalves and similar products. In January of
1988, Moog, Inc., formed Moog Controls, Inc.
("MCI"), as a separate Delaware corporation.
In doing so Moog, Inc., authorized and con-
sented to MCI's future use of the name
Moog. Between January 18, 1988, and Feb-
ruary 27, 1988, MCI was a wholly owned
subsidiary of Moog. On February 27, 1988,

Moog entered into a transaction with William C. Moog, who was at that time the largest shareholder of Moog, Inc. There was a stock exchange agreement, pursuant to which Mr. Moog transferred to Moog, Inc., all of his shares in Moog, Inc., in return for all of Moog's shares in MCI. Since that time, MCI has been independent of Moog, Inc., and no portion of its shares have been owned, either directly or indirectly, by Moog, Inc. At the same time, there was an "asset transfer agreement" with MCI, transferring almost all of the assets of the former industrial and automotive division to MCI. There also was a trade name license agreement, which states in relevant part:

1. *Grant.* Licensor [Moog] hereby grants to Licensee [MCI] the right to use the designation "Moog" as part of Licensee's corporate title "Moog Controls Inc." and as part of Licensee's trade name "Moog Controls." This grant of rights does not extend to use of "Moog" as a trademark or service mark. This grant of rights permits Licensee's use of "Moog" in the kind of composite formats identified above and does not permit the use of "Moog" alone as a corporate identifier or trade designation or in any other capacity.

At oral argument, the parties explained that when the License Agreement was executed, the two companies were not competitors, and enjoyed a largely complementary relationship. Subsequently, however, William Moog sold MCI. The company that purchased MCI entered into direct competition with Moog both in the United States and Europe. Consequently, there are now two companies offering competing products, both using the name "Moog."

The first issue to be decided is whether this court has subject matter jurisdiction of the controversy. The parties have extensively briefed the question, and I have considered oral argument. My prior order referring this matter to United States Magistrate Judge Leslie G. Foschio (Item 2) is vacated.

This lawsuit was triggered by the activities of certain European subsidiaries of Moog and MCI. Moog's Italian subsidiary, Moog Italiani S.r.l. ("MIS") sued MCI's European distributors alleging name and trademark infringement, among other causes of action. MIS is an Italian corporation, organized under the laws of Italy. It is a subsidiary of Moog GmbH, a German corporation. Moog GmbH is a subsidiary of Moog. Mumax S.r.1. ("Mumax") is an Italian corporation organized under Italian law. Mumax is an independently-owned distributor of MCI products in Italy. Mumax was formed in 1995 when a sales executive of MIS left the company to start Mumax.

On January 11, 1996, MIS filed a lawsuit in Italy against Mumax alleging unfair competition and intellectual property right infringement. Neither Moog nor MCI are named parties in the Italian suit. The Italian suit seeks to forbid Mumax from the further use if the name "Moog" to identify servovalves and other products, and to prohibit the distribution, sales, and publicity of certain products which have shapes similar to MIS products. Since the Italian suit was filed, Moog's other European subsidiaries have either filed or threatened similar actions in other countries.

In a letter dated February 28, 1996, Robert Brady, president of Moog, informed Edward Krasnicki, President, Controls Group, Moog Controls, Inc., that it was terminating the Trade License Agreement. Brady stated that the termination was justified because the License Agreement specified no term, and consequently could be terminated by either party at any time, pursuant to New York State law. Item 9 Ex. H.

In a letter dated March 1, 1996, Krasnicki responded that the rule invoked by Brady does not apply to contracts that specify events under which the contract may be terminated. In that case, according to the letter, the contract is only terminable under the specified events. Krasnicki stated that the License Agreement does specify three events under which the contract may be terminated, and that none of these events had occurred. Item 9, Ex. I.

Plaintiff's complaint in this court alleges that MIS's filing of the Italian suit against Mumax interferes with MCI's rights under the Trade Name License agreement. The complaint states five causes of action. In its

430

papers and at oral argument, MCI conceded that the first three causes of action are contract claims, but alleges that the fourth and fifth causes "arise under" federal statutes so as to confer federal jurisdiction. The fourth and fifth causes of action state, in relevant part:

In its fourth cause of action, plaintiff MCI seeks a declaratory judgment and the cancellation of the trademark and tradename of Moog. Moog, at the present time, is the registered owner of the trademark and tradename of "Moog." At the present time, Moog takes the position, through MIS, that MCI does not have the right to use the name "Moog Controls" on its products. MCI denies this, uses the name Moog Controls on its products, and manufactures and sells under this name. Moog, Inc., has been aware of this since early 1988. MCI alleges in this cause that Moog has failed to police the use of its tradename "Moog" and has permitted infringement of it, thereby abandoning this mark.

The fifth count alleges that pursuant to 28 U.S.C. § 2201, and 15 U.S.C. § 1119, MCI is entitled to declaratory judgment, stating that Moog has acquiesced in MCI's use of the name Moog Controls, and that the trademark registration is no longer valid and enforceable.

In its fifth cause of action, plaintiff seeks a declaratory judgment that it has not infringed on the mark, and it is entitled to judgment declaring that MCI has the right to use the name Moog on products manufactured and sold on a worldwide basis.

This court holds that it has no subject matter jurisdiction over plaintiff's claim for the reasons now expressed. For clarity, the fifth cause will be discussed first, and then the fourth cause of action.

### A. *Plaintiff's fifth cause of action*

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides:

In a case of actual controversy within a jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Federal jurisdiction does not lie simply because relief is requested under the Declaratory Judgment Act. *Colonial Penn Group v. Colonial Deposit Co.*, 834 F.2d 229, 233 (1st Cir.1987). The Act merely expands the relief available through litigation, it does not affect parties' substantive rights. *Id.* Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

A corollary to this principle is that " 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state-created cause of action, jurisdiction is lacking.' " *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 15–17, 103 S.Ct. 2841, 2849–2850, 77 L.Ed.2d 420 (1983) (quoting 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2767, at 744–45 (2d ed. 1983)).

Therefore "[i]n the typical federal trademark or patent declaratory judgment action, a potential infringer seeks a declaration that the defendant's *federal* rights will not be infringed by the plaintiff's actions, or that the defendant's patent or mark is invalid." *Colonial Penn*, 834 F.2d at 235.

Where, however, a trademark licensee brings an action against the licensor to enforce its rights under a trademark licensing agreement, the dispute is essentially contractual. *Silverstar Enters., Inc. v. Aday*, 537 F.Supp. 236, 241 (S.D.N.Y.1982). The *Silverstar* court reasoned that the mere recital of a trademark issue in the contract did not confer federal jurisdiction over what was essentially a contract dispute. *Id.*

Similarly, the court in *Bear Creek Prods., Inc. v. Saleh*, 643 F.Supp. 489, 493–494 (S.D.N.Y.1986), cites *Silverstar* for the

proposition that the Lanham Act is not intended to interfere with the contractual agreement between a mark's owner and his licensee. In licensor-licensee cases where a contract governs the rights to a mark, it is the contract and not the Lanham Act which determines the rights of the parties. *Id.*

▆ Plaintiff cites *Thompson Medical Co. v. National Center of Nutrition, Inc.,* 718 F.Supp. 252, 253 (S.D.N.Y.1989) for the proposition that an action for declaratory judgment of non-infringement is a recognized trademark remedy. Plaintiff then cites *Colonial Penn,* and a number of other cases, for the proposition that federal question jurisdiction is presented where a potential infringer seeks a declaration of non-infringement of defendants federal trademark rights. Item 16, p. 5.

Defendant counters accurately that *Thompson Medical,* unlike the present case, involved a question of first use of a trademark, and a claim of Lanham Act rights to the trademark by two parties which both possessed registered marks. Item 18, p. 6, citing *Thompson Medical,* 718 F.Supp. at 253. In contrast, the *Colonial Penn* court denied federal subject matter jurisdiction on facts similar to those in the present case, finding that plaintiff's federal action was merely a defense to a state law claim, and that federal jurisdiction did not lie. *Colonial Penn,* 834 F.2d at 233.

Moreover, neither *G. Heileman Brewing Co. v. Anheuser–Busch, Inc.,* 873 F.2d 985, 990–991 (7th Cir.1989), nor *Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.,* 619 F.Supp. 998, 1002 (D.Md.1985), provide support for plaintiff's argument. In *G. Heileman Brewing Co.,* the court found subject matter jurisdiction where defendant had already filed a federal infringement action against the plaintiff. In *Jeffrey Banks,* the court found subject matter jurisdiction where defendant specifically threatened an infringement suit based on the Lanham Act. In the present case, defendant has neither filed nor threatened a federal suit. In fact, defendant maintains any claim it might have is a state contract claim.

Consequently, this court cannot exercise federal subject matter jurisdiction over plain-

tiff's claim for a declaratory judgment of non-infringement as to its right to use the "Moog" name. Plaintiff's claim is in reality a defense to an anticipated claim for breach of contract. Therefore, the right to use the name is properly determined by state contract law and not by the Lanham Act.

## B. *Plaintiff's Fourth Cause of Action*

Neither does the court have subject matter jurisdiction under the fourth cause of action.

Section 1119 of the Lanham Act provides:

In any action involving a registered mark, the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

▆ The provisions of section 1119 granting the court authority to determine the right to registration and order cancellation assume a properly instituted and otherwise jurisdictionally supported action involving a registered trademark. *Universal Sewing Mach. Co. v. Standard Equipment Corp.,* 185 F.Supp. 257 (S.D.N.Y.1960).

In other words, one seeking cancellation offensively and relying solely upon that claim for federal jurisdiction would seem to be relegated to first exhausting his administrative remedies before resorting to the courts. Such a situation, exemplified by the instant action, must be distinguished from the cases where there is present some independent basis of federal jurisdiction, and wherein the validity of a registered trademark is brought into issue, for example, by way of defense or counterclaim.

*Id.* at 259.

In our view [section 1119] assumes a properly instituted and otherwise jurisdictionally supported action involving a registered mark.

*Id.* at 260.

▆ Plaintiff, however, attempts to limit the *Universal Sewing* holding to the facts of that case by citing *Apex Beauty Products Mfg. Corp. v. Brown Shoe Co.,* 209 F.Supp.

73 (S.D.N.Y.1962). The *Apex Beauty* court held that it had subject matter jurisdiction where the plaintiff did not allege it had ownership of a federally registered trademark, but relied on the fact that the defendant's mark was registered. The *Apex Beauty* court then cited *Universal Sewing* for the limited holding that where neither party held a valid trademark "it is well settled that the federal courts have no jurisdiction on the basis of federal trademark laws alone, absent diversity or other jurisdictional grounds." *Apex Beauty*, 209 F.Supp. at 74.

Defendant relies on a broader holding in *Universal Sewing* to argue that plaintiff cannot simply invoke section 1119 of the Lanham Act in order to state a federal cause of action. According to defendant, plaintiff's underlying cause of action is a defense to a contract claim, and therefore it does not involve a registered trademark within the meaning of the statute.

Plaintiff counters that the *Apex Beauty* court distinguished *Universal Sewing*, limiting the holding to deny subject matter jurisdiction only where "neither party to the action is the owner of a federally registered mark."

Contrary to plaintiff's characterization of the cases, the dispositive jurisdictional issue in both *Apex Beauty* and *Universal Sewing* was not which, if any, of the parties held a registered trademark. The fundamental issue was whether plaintiff's cause of action anticipated a suit based on the defendant's Lanham Act rights, such as a federal action for infringement or unfair competition. Trademark registration was a significant factor, because Lanham Act jurisdiction is properly invoked where the plaintiff makes a claim that it has a right to the mark independent of any license granted by defendant.

Plaintiff also relies on *D.M. & Antique Import Corp. v. Royal Saxe Corp.*, 311 F.Supp. 1261 (S.D.N.Y.1970). But the court in that case held only that the plaintiff had standing to sue for cancellation of defendant's trademark even where the plaintiff lacked a registered mark. *Id.* at 1268. The court made no explicit finding as to the basis for subject matter jurisdiction, because plaintiff claimed that it held the trademark at issue before defendant applied for it, and that defendant obtained the registrations falsely. Consequently, any anticipated claim by defendant would necessarily have implicated the validity of defendant's trademark. The nature of defendant's anticipated claim was not at issue.

In contrast to the cited cases, plaintiff is not seeking to avoid a federal trademark infringement suit in this action. Rather, it is seeking to avoid first a series of foreign suits, and perhaps ultimately a suit for breach of the License Agreement. In addition, the issue in such a suit would not be the validity of trademark registration, it would be the terms of the Agreement. The validity of the trademark registration would only be presented by plaintiff's defense to that suit.

In addition, denial of jurisdiction in this case is consistent with the boundary set by one noteworthy commentator:

> Under modern decisions, a plaintiff who has no federal mark registration may maintain a federal declaratory judgment suit which puts in issue the validity of defendant's federal mark registration. A federal claim is presented in such cases where the plaintiff seeks to avoid a threatened federal trademark infringement suit and a question as to the validity of the registration is present.

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, (3d ed. 1995) § 32.21[2] at 32–76 (citations omitted).

Finally, it is important to note that plaintiff will not be prejudiced by bringing this action in state court. To the extent plaintiff's defenses rely on construction of the Lanham Act, McCarthy suggests that state and federal courts enjoy parallel jurisdiction over trademark actions:

> [I]n cases arising under the federal Lanham Trademark Act, the jurisdiction of state and federal courts is concurrent. There is no language in the Lanham Act which indicates that its remedies can only be asserted in the federal courts....

> [T]here is no doubt that violations of the Lanham Act can be properly brought in state courts and that state courts possess powers under the Lanham Act identical to

those of the federal courts. However, infringement suits brought in state court for infringement of federally registered trademarks are removable to the federal courts on the initiative of the defendant.

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 32.01 at 32–9, 32–10 (3d ed. 1995).

Ultimately, any action arguably threatened by the defendant would be based on a claim of breach of contract, not on a federal trademark infringement suit. Plaintiff's claim that defendant's mark is invalid raises a federal defense to a state law cause of action: this posture does not confer federal subject matter jurisdiction.

### CONCLUSION

For the reasons stated above, the court finds that it has no subject matter jurisdiction over plaintiff's claim. Defendant's motion to dismiss is granted, and plaintiff's claim is dismissed. Consequently, plaintiff's motion for a temporary restraining order and injunction is denied.

So ordered.