**Clarence WELCH, Administrator of the Estate of David R. Welch**

v.

**UNITED STATES of America.**

**Civ. No. H–77–347.**

United States District Court, D. Connecticut.

Feb. 3, 1978.

Holly B. Fitzsimmons, James A. Wade, Robinson, Robinson & Cole, Hartford, Conn., for plaintiff.

Diana Garfield, Asst. U. S. Atty., Richard Blumenthal, U. S. Atty., New Haven, Conn., for defendant.

## RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

This case is before the Court on the defendant's motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. The controversy arises out of a motor vehicle accident on the premises of the United States Naval Air Facility in Sigonella, Italy, which resulted in the death of a sailor, David R. Welch, after he was struck by a United States Naval vehicle. The plaintiff-administrator of the decedent's estate is aggrieved by the decision of the Secretary of the Navy that David R. Welch was killed "incident to his service", thus barring recovery under the Military Claims Act (MCA), 10 U.S.C. § 2731, et seq. The Court finds that it has jurisdiction to review the question of law as to whether the decedent was killed "incident to service". However, the plaintiff is not entitled to an order compelling the defendant to process his claim under the MCA, because the Secretary of the Navy has accurately applied the controlling law of this circuit, as set forth in Camassar v. United States, 531 F.2d 1149 (2d Cir. 1976), in concluding that the decedent died "incident to service."

### Facts

The plaintiff is the administrator of the Estate of David R. Welch. On July 27, 1976, the decedent was serving on active duty with the United States Navy stationed at the United States Naval Air Facility in Sigonella, Italy. While walking to work on the Naval Air Facility that morning, at approximately 6:50 a. m., Welch was struck by a United States Naval vehicle, which was negligently driven by a member of the United States Navy. As a result of the accident, Welch died while being transported to the Naval Regional Medical Center in Naples, Italy. The defendant in the action is the Secretary of the Navy.

### Discussion of the Law

The initial barrier to any suit for damages against the United States is the doctrine of sovereign immunity. Congress removed this barrier for litigants alleging wrongs committed by the Government, which were covered by the Federal Torts Claims Act of 1946, 28 U.S.C. § 1346(b). The existence of the Federal Torts Claims Act is of no help to the plaintiff in this instance, however, because the statute specifically excludes his claim. The tortious conduct of which the plaintiff complains occurred in Italy, and 28 U.S.C. § 2680(k) states that the Act shall not apply to "[a]ny claim arising in a foreign country."

Since the remedy afforded by the Federal Torts Claims Act is unavailable to him, the plaintiff looks to the Military Claims Act, 10 U.S.C. § 2731, et seq., for relief. The Military Claims Act does not enable private litigants to bring suit against the federal government, as does the Federal Torts Claims Act. Rather, the MCA gives authority to the Secretaries of the Army, Navy, and Air Force to settle claims amounting to less than $25,000 against the United States for personal injury or death, inter alia. Pursuant to the authority delegated to him by the MCA, the Secretary of the Navy has promulgated regulations which prescribe under what circumstances these military claims will be settled. 32 C.F.R. § 750.55(a) states, that subject to certain exceptions:

> "[T]he Navy shall be responsible under 10 U.S.C. 2733 in money damages for damage to or loss or destruction of property, real or personal, or for personal injury or death, which is caused by military personnel or civilian employees of the Navy while acting within the scope of their employment."

The United States does not contest the assertion that the case of the plaintiff falls within the inclusive language of this part of the regulation. The Government contends, however, that both the MCA [1] and the Navy

---

**1.** 10 U.S.C. § 2733(b) states that a claim may be allowed under the MCA only if:

"(3) it is not for personal injury or death of [a military] employee whose injury or death is incident to his service."

regulations promulgated pursuant thereto [2] exclude the plaintiff's claim from the scope of the Government's liability, in that the claim involves the death of a member of the Navy who was killed "incident to his service." In view of this "incident to service" exception, the Secretary of the Navy denied the plaintiff's administrative claim brought pursuant to the MCA. The plaintiff in the instant litigation seeks a judicial determination that his case does not fall within the "incident to service" exclusion and that therefore he is entitled to have his claim processed fully under the MCA.

### Jurisdiction

The plaintiff asserts that jurisdiction over the instant controversy is conferred on this Court by 28 U.S.C. § 1331(a).[3] Congress recently amended this section:

"to eliminate the requirement of a specified amount-in-controversy as a prerequisite to the maintenance of 'any [1331] action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.' The obvious effect of this modification, *subject only to preclusion-of-review statutes created or retained by Congress,* is to confer jurisdiction on federal courts to review agency action . . . ." *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977) (emphasis supplied).

While the amendment of § 1331(a) "undoubtedly evinces Congress' intention and understanding that judicial review should be widely available to challenge the actions of federal administrative officials," *Califa-*

no, *supra,* at 104, 97 S.Ct. at 983; 1976 U.S.Code Cong. and Admin.News, at p. 6125, this Court is without power to review the decision of the Secretary of the Navy not to pay damages on a claim made pursuant to the MCA, if Congress has expressly ·or impliedly shielded this determination from judicial review. 1976 U.S.Code Cong. and Admin.News, at p. 6132.

Justice Harlan, writing for the Supreme Court in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), indicated that there is a presumption that final agency action shall be subject to judicial review. *Abbott, supra,* 387 U.S. at 140–141, 87 S.Ct. 1507. This presumption of reviewability:

"can be overcome by showing (a) intent of Congress to cut off review, (b) inappropriateness of the subject matter for judicial consideration, *or* (c) some other reason that a court deems sufficient for unreviewability." Davis, *Administrative Law of the Seventies* (Supplementing *Administrative Law Treatise* ) § 28.08, at 634–635 (1976).

*Abbott* indicated that courts should restrict access to judicial review on the grounds that Congress so intended, only where this legislative intent has been shown by "clear and convincing evidence." 387 U.S. at 141, 87 S.Ct. 1507.

Congressional intent on the issue of reviewability is provided by the MCA itself. 10 U.S.C. § 2735 states that:

"Notwithstanding any other provision of law, the settlement of a claim under [the MCA] is final and conclusive." [4]

---

**2.** 32 C.F.R. § 750.55(d)(14) bars:

"Any claim for personal injury or death of military personnel or civilian employees of the Government if such injury or death occurs incident to their service . . . ."

**3.** The plaintiff also argues that the Court has jurisdiction over the case pursuant to 5 U.S.C. § 702 (of the Administrative Procedure Act) and 28 U.S.C. § 2201 (allowing declaratory relief). It is now established that neither of these sections confers subject-matter jurisdiction on the federal courts. *See, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (holding that the Administrative Procedure Act

"does not afford an implied grant of subject-matter jurisdiction . . . ."); *Lear Siegler, Inc. v. Adkins,* 330 F.2d 595 (9th Cir. 1964) (holding that § 2201 does not establish a basis for jurisdiction in the federal courts).

**4.** The statute also indicates that a decision by the Secretary to disallow a claim under the MCA has been "settled". Thus, 10 U.S.C. § 2731 states:

"In this chapter, 'settle' means consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance *or by disallowance.*" (emphasis supplied).

While this language appears to exclude judicial review, the Senate Report which discusses the purpose of this section states that Congress sought to prevent "other agencies of the Government from reviewing and reversing actions on claim settlements of agencies specifically authorized to settle and pay certain claims." 1972 U.S.Code Cong. and Admin.News, at pp. 3109–10. Thus, the legislative history suggests that the purpose of the "final and conclusive" language in § 2735 is to prevent federal executive agencies and officials, such as the Comptroller General of the United States, from reviewing and possibly rejecting the settlements of MCA claims. Under this view, Congress, in enacting § 2735, was not precluding judicial review of agency construction and application of law, but only making the settlements of MCA claims final with respect to administrative review.[5]

This interpretation of the words "final and conclusive" receives support from the Supreme Court's decision in *Shaughnessy v. Pedreiro*, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955). In that case the plaintiff, an alien, was ordered deported under the Immigration and Nationality Act of 1952. The Act specified that deportation orders of the Attorney General shall be "final." When the plaintiff sought to have a federal court review the deportation order and declare it to be void, the Government contended that the Act precluded judicial review of deportation orders by any method, except habeas corpus. The Supreme Court rejected this contention, stating:

"It is more in harmony with the generous review provisions of the Administrative Procedure Act to construe the ambiguous word 'final' in the 1952 Immigration Act as referring to finality in administrative procedure rather than as cutting off the

right of judicial review in whole or in part." *Shaughnessy, supra*, 349 U.S. at 51, 75 S.Ct. at 594.

The Supreme Court reached a similar conclusion in *Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958). In *Harmon* the Supreme Court reviewed the validity of a less-than-honorable discharge from the Army in spite of the relevant statute which made the order of the Army Discharge Review Board "final subject only to review by the Secretary of the Army." The Court concluded that where agency "inaction or action turns on a mistake of law, then judicial relief is often available." *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 318, 78 S.Ct. 752, 757, 2 L.Ed.2d 788 (1958). The Second Circuit Court of Appeals has indicated that the rational behind this conclusion is "the fundamental principle that ours is a government of laws, not men." *Hammond v. Lenfest*, 398 F.2d 705 (2d Cir. 1968).

Since none of the factors which would overcome the presumption of reviewability of an agency's interpretation of the law is present in this case, the Court concludes that it has jurisdiction over the plaintiff's claim under 28 U.S.C. §§ 1331(a) and 1361.

### The "Incident to Service" Exclusion

■ The accident out of which the present controversy arises occurred on the premises of the Naval Air Facility in Sigonella, Italy. The decedent was considered to be on active duty[6] despite the fact that he had not yet reported to work on the day of the accident, for it is established that:

"Military or naval personnel continue in active duty status even where they are on liberty or on leave which are attributes of active duty . . . ." *Camassar v.*

---

5. There is an isolated comment in the legislative history which suggests an alternative interpretation of § 2735. See, Letter from Assistant Secretary of the Interior to Senator James Eastland, 1964 U.S.Code Cong. and Admin. News, at pp. 3414–15. However, the Court finds the later statements quoted above from the Senate Report to be more authoritative on the issue of legislative intent. First, the official Senate Report is entitled to greater weight than

a mere letter to the Chairman of the relevant Senate committee. Second, the language of the Senate Report more directly addresses the issue of the "purpose" of the legislation than does the passing remark in the above-mentioned letter.

6. The plaintiff concedes in the complaint that the decedent was on active duty at the time of the accident.

*United States,* 531 F.2d 1149, 1151 n. 2 (2d Cir. 1976).

The Secretary of the Navy declared that the decedent was killed "incident to his service," and therefore his claim was barred by 10 U.S.C. § 2733(b)(3).

While no case appears to have interpreted the "incident to service" exclusion of the MCA, there is an established body of law to which the Court can turn for guidance. In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court created an exception to coverage of the Federal Torts Claims Act, 28 U.S.C. § 1346(b). The Court noted that the then extant Military Personnel Claims Act specifically excluded claims of military personnel "incident to their service," *Feres,* 340 U.S. at 144, 71 S.Ct. 153, and then proceeded to apply a similar exception to the Federal Torts Claims Act. Since the current MCA retains the "incident to service" exclusion, the case law interpreting the judicially-created *Feres* exception should be considered authoritative on the interpretation of the statutory language in question.

The Second Circuit Court of Appeals has distilled the general rule of law from the progeny of *Feres* as follows:

> "[A]n injury to a member of the armed forces, on active duty, which occurs at a military base or installation . . . is an injury 'aris[ing] out of or [is] in the course of activity incident to [military] service.'" *Camassar v. United States,* 531 F.2d 1149, 1151 (1976), *affirming* 400 F.Supp. 894 (D.Conn.1975) (footnote omitted).

In the instant case, the decedent was a member of the Navy who was on active duty and whose injury occurred on a military base. The conclusion is inescapable, given *Camassar,* that the decedent's death occurred "incident to his service." Consequently, the Secretary of the Navy did not err when he determined that the claim involved in this case was barred by 10 U.S.C. § 2733(b)(3).

Accordingly, the defendant's motion to dismiss is granted. SO ORDERED.