**Louis J. RODRIGUE, Administrator of the Estate of William J. Rodrigue, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 90–12004–S.**

United States District Court, D. Massachusetts.

Feb. 25, 1991.

John Edward Wall, David Shaughnessy, Law Office of John Wall, Boston, Mass., for plaintiff.

Mary Elizabeth Carmody, Asst. U.S. Atty., Boston, Mass., Diana L. Gordon, Paul F. Figley, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

SKINNER, District Judge.

### Background

This case arises out of the drowning death of William J. Rodrigue while he was serving as an airman for the United States Air Force at Kadena Air Base, Okinawa, Japan. On March 8, 1986, Airman Rodrigue and several other airmen went to Hedo Point, a beach approximately twenty-five miles from Kadena Air Base. At about 4:00 p.m., Airman Rodrigue and another airman went swimming. Both were carried out to sea by rough currents. (Complaint, ¶ 9) Between 6:30 and 7:00 p.m., after unsuccessful rescue attempts by the Japanese police and members of the group accompanying Rodrigue, some of the airmen on shore telephoned Kadena Air Base. (¶¶ 10, 12, 13) Despite several assurances to the airmen that a rescue helicopter would arrive shortly, the Air Force helicopter did not arrive until approximately 10:15 p.m. (¶¶ 13, 14, 18) The next day, the bodies of Airman Rodrigue and the other airman were found. (¶ 9)

On March 3, 1988, Louis Rodrigue filed a claim with the Department of the Air Force for damages under the Military Claims Act ("MCA") for the death of his son. On December 29, 1988, the Air Force denied the plaintiff's claim on three grounds: (1) the accident was principally the result of the choice of the two airmen to swim in unsafe conditions; (2) the Air Force had no legal duty to rescue the airmen; and (3) since Airman Rodrigue's death was "incident to service," payment of the claim was prohibited by the Military Claims Act. On February 28, 1989, the plaintiff appealed the decision. In June 1989, the Air Force again denied the plaintiff's claim. This second denial constituted final administrative action by the Air Force pursuant to the Military Claims Act.

On August 16, 1990, the plaintiff filed a complaint in this court. The plaintiff seeks a declaratory judgment stating that the defendant owed a duty to Airman Rodrigue and that the Air Force misinterpreted the "incident to service" exception. The plaintiff also asks the court to remand his claim to the Air Force to be determined in accordance with the declaratory judgment. The United States has filed a motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

### Discussion

The plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1331 and the Military Claims Act, 10 U.S.C. § 2731 et seq. The United States Supreme Court has held that 28 U.S.C. § 1331, which gives district courts jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States," is subject to "preclusion-of-review statutes created or retained by Congress." *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The plaintiff may maintain this action in federal court, therefore, only if judicial review is not precluded by the Military Claims Act.

The relevant section of the Military Claims Act provides: "Notwithstanding any other provision of law, the settlement of a claim under section 2733, 2734, 2734a, 2734b, or 2737 of this title is final and conclusive." 10 U.S.C. § 2735.[1] The government argues that this provision precludes all judicial review of administrative decisions under the Military Claims Act. The plaintiff, on the other hand, claims that judicial review is not precluded by this language.

The Supreme Court has held that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, [87 S.Ct. 1507, 1511, 18 L.Ed.2d 681] (1967)." *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 778, 105 S.Ct. 1620, 1626, 84 L.Ed.2d 674 (1985). In *Lindahl*, the Court interpreted 5 U.S.C. § 8347(c), which provides that OPM's deter-

---

1. The term "settlement" includes the disallowance of a claim. 10 U.S.C. § 2731.

minations of questions of disability and dependency in administering the provision of annuities to retired employees "are final and conclusive and are not subject to review." Despite the seemingly decisive language of the statute, the Court stated: "our hesitation regarding the 'plain meaning' of § 8347(c) is compounded by the fact that, when Congress intends to bar judicial review altogether, it typically employs language far more unambiguous and comprehensive than that set forth in § 8347." *Lindahl*, 470 U.S. at 779–80, 105 S.Ct. at 1627. As an example of less ambiguous statutory language, the Court quoted 5 U.S.C. § 8128(b) (compensation for work injuries):

> The action of the Secretary [of Labor] or his designee in allowing or denying a payment under this subchapter is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

470 U.S. at 780 n. 13, 105 S.Ct. at 1627 n. 13. The Court reasoned that "Congress' failure to use similar language in § 8347(c) therefore reinforces the possibility that the finality bar may extend only to OPM's *factual* determinations...." 470 U.S. at 780, 105 S.Ct. at 1627. After carefully examining the legislative history of § 8347(c), the Court concluded that:

> while the factual underpinnings of § 8347 disability determinations may not be judicially reviewed, such review is available to determine whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'"

470 U.S. at 791, 105 S.Ct. at 1633 (citation omitted).

Last week, the Supreme Court reaffirmed its strong presumption in favor of judicial review. In holding that the district court had jurisdiction to hear plaintiffs'

constitutional and statutory challenges to procedures used by the Immigration and Naturalization Service[2], the Court stated:

> [H]ad Congress intended the limited review provisions of § 210(e) of the [Immigration and Nationality Act] to encompass challenges to INS procedures and practices, it could easily have used broader statutory language.... It is presumable that Congress legislates with knowledge of our basic rules of statutory construction, and given our well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action, *see Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, [106 S.Ct. 2133, 2135, 90 L.Ed.2d 623] (1986), coupled with the limited review provisions of § 210(e), it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review.

*McNary v. Haitian Refugee Center, Inc.*, —— U.S. ——, 111 S.Ct. 888, 897–98, 112 L.Ed.2d 1005 (1991).

As the plaintiff points out, the language in the Military Claims Act, "final and conclusive," is not as clear even as the language the Court found not to be sufficiently "clear and convincing" in *Lindahl* to preclude judicial review. The Military Claims Act language does not even approach the level of unambiguity found in the statutes noted by the *Lindahl* Court as precluding all judicial review. The inquiry should not be limited, however, to an analysis of the statutory language. To determine whether there is clear and convincing evidence of a legislative intent to preclude judicial review, I must turn to the legislative history of the Military Claims Act. *See Lindahl*, 470 U.S. at 778–79, 105 S.Ct. at 1626–27.

The legislative history of the Military Claims Act contains two references to the meaning of "final and conclusive" in 10 U.S.C. § 2735. The section of the Senate Report entitled "Purpose of the Legislation" states: "The proposed legislation

---

**2.** The case did not address judicial review of individual denials of status applications for the "Special Agricultural Workers" ("SAW") amnes-ty program, because judicial review in this context was explicitly foreclosed by the statute. *See* 8 U.S.C. § 1160(e).

would be consistent with the cited general policy of preventing other *agencies* of the Government from reviewing and reversing actions on claim settlements of agencies specifically authorized to settle and pay certain claims." S.Rep. No. 1056, 92d Cong., 2nd Sess., *reprinted in* 1972 U.S. Code Cong. & Admin.News 3106, 3109–10. (Emphasis added.) The second reference appears in an earlier letter from the Assistant Secretary of the Interior to Senator James Eastland, Chairman of the Senate Judiciary Committee. The letter states: "No provision is made for appeal to the courts. On the contrary, the bill provides that the administrative settlement of a claim is final and conclusive." 1964 U.S. Code Cong. & Admin.News 3407 at 3414–15.

After examining the statutory language and the legislative history of § 2735, I conclude that there is no "clear and convincing" evidence that Congress intended to preclude all judicial review of administrative settlements of claims. I agree with the reasoning of Judge Clarie of the District of Connecticut that in enacting § 2735, Congress intended to make settlements of MCA claims final with respect to administrative review only, not with respect to judicial review of the construction and application of the law. *Welch v. United States*, 446 F.Supp. 75, 78 (D.Conn.1978). In attempting to discern Congress' intent, I attach greater weight to the 1972 Senate Report than to the 1964 letter. First, the statement in the Senate Report was made later, in 1972, five years after the Supreme Court's holding in *Abbott Laboratories v. Gardner, supra,* that judicial review should be precluded only upon a showing of clear and convincing evidence of legislative intent to do so. Second, the official Senate Report is entitled to more weight than a letter to the committee Chairman. Finally, "the language of the Senate Report more directly addresses the issue of the 'purpose' of the legislation than does the passing remark in the above-mentioned letter." *Welch*, 446 F.Supp. at 78 n. 5.

The cases cited by the government are not persuasive. Most of the courts that have held that § 2735 precludes judicial review have failed to analyze the statute's legislative history. *See Labash v. United States Dept. of Army*, 668 F.2d 1153 (10th Cir.1982), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982); *Poindexter v. United States*, 777 F.2d 231 (5th Cir.1985); *Broadnax v. United States Army*, 710 F.2d 865 (D.C.Cir.1983); *Bryson v. United States*, 463 F.Supp. 908 (E.D.Pa. 1978). *But see Towry v. United States*, 459 F.Supp. 101 (E.D.La.1978), *aff'd*, 620 F.2d 568 (5th Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *Vogelaar v. United States*, 665 F.Supp. 1295 (E.D.Mich.1987). Moreover, in two of the cases cited by the government, the courts stated that judicial review might be available in certain contexts. *See Labash*, 668 F.2d at 1155 ("we have determined that 10 U.S.C. § 2735, in the absence of a cognizable constitutional claim, expressly precludes review of the Secretary's decision"); *Broadnax*, 710 F.2d at 867 ("§ 2735 may well permit some limited review, for example 'where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination'" (citation omitted)).

Since Mr. Rodrigue does not seek review of any factual determinations made by the agency, I need not address the issue of whether judicial review would be available in that circumstance. Mr. Rodrigue merely seeks a declaration of his legal rights under the Military Claims Act. For the reasons stated above, I conclude that the court has subject matter jurisdiction over the plaintiff's claim.

Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction is denied.