Louis J. RODRIGUE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 90–12004S.

United States District Court,
D. Massachusetts.

Oct. 7, 1991.

**50**

John Edward Wall, David Shaughnessy, Law Office of John Wall, Boston, Mass., for plaintiff.

Mary Elizabeth Carmody, U.S. Attorney's Office, Boston, Mass., Diana L. Gordon, Paul F. Figley, U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

SKINNER, District Judge.

*Background*

Plaintiff brings this action against the United States of America for declaratory judgement pursuant to 28 U.S.C. § 2201, to resolve an actual controversy between the parties arising under the Military Claims Act, 10 U.S.C. § 2731 *et seq.* (MCA), and 28 U.S.C. § 1331. Defendant has moved to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). For purposes of this motion, all well pleaded allegations contained in the complaint and its appendices will be assumed as true.

In March of 1986, plaintiff's son, William J. Rodrigue, was serving in the United States Air Force. He was stationed at Kadena Air Base ("Kadena"), Okinawa, Japan. On March 8, Airman Rodrigue ("Rodrigue") was on active duty, but on leave. While on leave, Rodrigue and others travelled to a beach approximately twenty-five miles from Kadena for non-military activities. At approximately 4:00 p.m., Rodrigue and another airman went swimming, but were carried out to sea by rough currents. (Complaint, ¶¶ 6, 7, 9)

At approximately 5:00 p.m., airmen on the beach first sensed that the swimmers were in trouble. Airmen on shore and the Japanese police attempted to rescue the swimmers by surfboard and/or by a fishing boat, but were unsuccessful. (¶¶ 10, 12) Between 6:30 and 7:00 p.m., the airmen on shore made the first of several telephone calls for help to Kadena Air Base. Each time the airmen were assured that a rescue helicopter would arrive shortly. (¶¶ 13, 14) At one point while the swimmers remained in distress, Kadena Air Base had telephoned the Air Force 33rd Aerospace Rescue and Recovery Squadron, but there was no one in charge to take the call. Nor

was there a properly functioning emergency beeper device to track down such person. (¶ 15)

At approximately 8:05 p.m., the Japanese Maritime Safety Agency ("JAPSA"), the agency responsible for Japanese rescue efforts, notified Kadena Air Base that JAPSA would not aid the swimmers until U.S. military resources were exhausted. The Air Force helicopter did not arrive until approximately 10:15. The next day, the bodies of Rodrigue and the other airman were found. (¶¶ 16, 18, 19)

On March 3, 1988, Louis Rodrigue filed a claim under the Military Claims Act ("MCA") for the death of his son with the Department of the Air Force. On December 29, 1988 the Air Force denied plaintiff's claim on three grounds: (1) the accident was principally the result of the two airmen's decision to swim in unsafe conditions; (2) the Air Force had no legal duty to rescue the airmen; and (3) Airman Rodrigue's death was "incident to service" and therefore excluded from the MCA's coverage. On February 28, 1989, plaintiff appealed the decision. In June 1989, the Air Force again denied plaintiff's claim. This second denial constituted final administrative action by the Air Force pursuant to the MCA.

On August 16, 1990, the plaintiff filed a complaint in this court. The plaintiff seeks a declaratory judgement stating that the defendant owed a duty to Airman Rodrigue and that the Air Force misinterpreted the "incident to service" exception of the MCA. The plaintiff also asks the court to remand his claim to the Air Force to be determined in accordance with the declaratory judgement. The defendant initially moved for dismissal for lack of subject matter jurisdiction. I denied that motion by order dated February 25, 1991. The United States now moves to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). This motion raises entirely different questions.

*Discussion*

Duty to Airman Rodrigue

The existence and extent of a duty actionable in tort is entirely a question of law. *Carrier v. Riddell, Inc.*, 721 F.2d 867, 868 (1st Cir.1983); *Fed. Exp. Corp. v. State of R.I., Dept. of Transp.*, 664 F.2d 830, 835 (1st Cir.1981); Restatement (Second) of Torts § 328B(b) (1988) ("Restatement 2d"). Under the Military Claims Act, the military can be held liable in tort "only to the extent that the law ... would permit recovery from a private individual under like circumstances." 10 U.S.C. § 2733(b)(4). The applicable law for determining tort liability for the United States when the claim arises in a foreign country is "determined according to general principles of tort law common to the majority of jurisdictions." 32 C.F.R. 842.51(a)(2).

As a general rule there is no duty for one person to rescue another unless the first person is responsible for the second person's danger. Restatement 2d § 314. *See, e.g., City of Santee v. County of San Diego*, 211 Cal.App.3d 1006, 259 Cal.Rptr. 757 (1989). This rule is generally "applicable irrespective of the gravity of the danger to which the other is subjected and the insignificance of the trouble, effort, or expense of giving him aid or protection." Restatement 2d § 314, cmt. c; *Frank v. United States*, 250 F.2d 178, 180 (3rd Cir. 1957), *cert. denied*, 356 U.S. 962, 78 S.Ct. 1000, 2 L.Ed.2d 1069 (1958); *Daley v. United States*, 499 F.Supp. 1005, 1009 (D.Mass. 1980) ("There is no affirmative duty on the Coast Guard to institute a search even if a court would have considered its refusal unreasonable.").

An exception to this rule arises when the first person stands in a special relationship with the person in distress. Restatement 2d § 314A. When such a special relationship exists, the first person has an affirmative duty to aid or protect the second person, regardless of how the danger arose. Examples of such special relationships are those of common carrier to passenger or innkeeper to guests. *Id.* To a lesser extent, "an obligation to render aid may [also] grow out of a relationship such

**52**

as master and servant or ship and crewman." *Frank*, 250 F.2d at 179. But while the Restatement 2d notes that "[t]he law appears ... to be working slowly toward a recognition of duty to aid or protect in any relation of dependence or of mutual dependence," (§ 314A, cmt. b), no special relationship based *solely* on the relation of the military to its servicemen has ever been recognized.

■ Nor will this court be the first. I see no need to recognize such a unique "special relationship" when the military already stands in the relation of master to servant with its servicemen. According to the Restatement 2d § 314B(2), an employer only owes a duty to aid and protect an employee when the employee is endangered while "acting within the scope of his employment." When Airman Rodrigue drowned, he was off-duty, off-base, and engaged in "non-military activities". (Complaint ¶¶ 6, 7) As such, he was acting outside the scope of his employment as a serviceman when his life became endangered. *See Hartzell v. United States*, 786 F.2d 964, 967–69 (9th Cir.1986); *Louie v. United States*, 776 F.2d 819, 826 (9th Cir.1985). Therefore, the Air Force *ab initio* owed no affirmative duty of rescue to Airman Rodrigue.

■ Once the Air Force voluntarily undertook the rescue mission, though, it subsequently assumed a Good Samaritan duty to carry out its rescue operations with due care. *Daley*, 499 F.Supp. at 1010; *Lacey v. United States*, 98 F.Supp. 219, 220 (D.Mass.1951). The Restatement 2d provides that a Good Samaritan is liable for "physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement 2d § 323 (1988).

■ However, plaintiff's complaint does not allege that the Air Force's actions increased the risk of harm to Airman Rodrigue. *See Frank*, 250 F.2d at 180; *Pa-*

*tentas v. United States*, 687 F.2d 707, 717 (3d Cir.1982) (" 'increased risk' means some physical change to the environment or some other material alteration of circumstances"). The Air Force did not change the conditions of the water, or limit Airman Rodrigue's ability to reach the shore. Moreover, the Air Force did not prevent others from attempting rescues. (Complaint ¶¶ 10, 11) Others on shore had tried to rescue Airman Rodrigue but failed, ostensibly because of the dangerous water conditions.

Nor does the complaint allege that Airman Rodrigue drowned because of his reliance on the Air Force's rescue activities. There is no allegation that the decedent turned down other rescuers while waiting for the Air Force, or that the airmen or Japanese police on shore halted their own rescue efforts in reliance on the Air Force's repeated assurances that a rescue helicopter would arrive shortly. There is also no clear allegation that JAPSA ceased its efforts in reliance upon the Air Force's activities; plaintiff only alleges that Kadena Air Base learned that JAPSA would not provide aid until the U.S. military resources were exhausted, (Complaint ¶ 16) not that JAPSA was "resting on its oars" in the belief that the United States Air Force had matters well in hand. *See Lacey v. United States*, 98 F.Supp. 219, 220 (D.Mass.1951). While I believe Plaintiff might be able to correct his complaint, such amendment would be fruitless since plaintiff would still be barred from recovery by the "incident to service" exclusion of the MCA.

*Incident to Service Exclusion of the Military Claims Act*

■ Members of the military can not recover under the MCA if their injury occurred "incident to service". 10 U.S.C. § 2733(b)(3); 32 C.F.R. § 8420.50(q). When deciding plaintiff's claim, the Air Force interpreted the above statutory language in light of the "incident to service" doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres*, the Supreme Court created an incident to service exception to coverage of the Federal Torts Claims Act ("FTCA"). Since

*Feres,* the doctrine has also become applicable to claims under the Public Vessels Act, *Charland v. United States,* 615 F.2d 508, 509 (9th Cir.1980), the Suits in Admiralty Act, *Id.,* and *Bivens* type actions by servicemen against the military, *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

In the one case in which a district court has interpreted the "incident to service" exception of the Military Claims Act, the court relied upon the body of law stemming from the *Feres* decision. *Welch v. United States,* 446 F.Supp. 75, 79 (D.Conn.1978). I agree with Judge Clarie's ruling in *Welch* that "the case law interpreting the judicially-created *Feres* exception should be considered authoritative on the interpretation of the statutory language in question." *Id.* *See also LaBash v. United States Dept. of Army,* 668 F.2d 1153, 1157 n. 7 (10th Cir. 1982).

In *Feres,* the Supreme Court held that a soldier may not recover under the FTCA for injuries which "arise out of or are in the course of activity incident to service." 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). Over time the Court has repeatedly reaffirmed and broadened the incident to service doctrine with "an increasing sense of awe for things military. As a result, practically any suit that 'implicates the military judgments and decisions', runs the risk of colliding with *Feres.*" *Lutz v. Secretary of Air Force,* 944 F.2d 1477, 1484 (9th Cir.1991) (citing *Persons v. United States,* 925 F.2d 292, 295 (9th Cir. 1991)). *See, e.g., United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (*Feres* doctrine bars suit against government for off-base, off-duty murder of one serviceman by another even if the government knew that the murderer previously had been convicted of manslaughter); *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (*Feres* doctrine bars *Bivens* action against army brought by soldier who had volunteered for a chemical warfare testing program, but was secretly administered lysergic acid diethylamide (LSD)). *See also United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).

The *Feres* doctrine is not so broad so as to bar claims by servicemen against the military entirely. *Stanley,* 483 U.S. at 681, 107 S.Ct. at 3062. Merely because a soldier is injured while on active duty and subject to military discipline is not enough to trigger the exclusion. *Lutz v. Secretary of Air Force,* 944 F.2d at 1487. But neither is a soldier's being injured while off duty and away from base controlling as to whether a claim is barred by the incident to service exception. *Shearer,* 473 U.S. at 57, 105 S.Ct. at 3042. The place of injury "is not nearly as important as whether the suit requires the civilian court to second-guess military decisions, and whether the suit might impair essential military discipline. *Id.,* (citations omitted). The issue is whether a claim is the type of claim that, "if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.,* at 59, 105 S.Ct. at 3043.

Plaintiff's claim clearly falls within the incident to service exception of the MCA. The mere process of courts allowing discovery in cases such as this would "require the court[s] to delve into questions of military decision making." *Morey v. U.S.,* 903 F.2d 880, 882 (1st Cir.1990) To determine whether the Air Force breached its Good Samaritan duty to Airman Rodrigue, this court would be forced to inquire into such questions as whether the Air Force's mobilization procedures for voluntary sea rescues were reasonable, and whether Airman Rodrigue's plight was given sufficient priority in the allocation of Air Force resources on the night in question. Such second guessing of military decision-making is barred by the *Feres* doctrine as applied to the Military Claims Act.[1]

---

1. Airman Rodrigue's injuries were incurred incident to service for another reason as well. Courts have consistently held that "the provision of benefits to soldiers because of their status as military personnel is 'activity incident to service.'" *Rayner v. United States,* 760 F.2d 1217, 1219 (11th Cir.1985) (*per curiam*), cert. den. *Rayner v. United States,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985) Here the Air Force's rescue attempt constituted a benefit conferred on Airman Rodrigue at least partly because of

ACCORDINGLY, the defendant's motion to dismiss is granted, and plaintiff's request for remand to the Department of the Air Force is denied.

his military status. *See Veillette v. United States*, 615 F.2d 505, 507 (9th Cir.1980) (*Feres* bars medical malpractice suit against military hospital by off-duty Airman injured in an off-base motorcycle accident, even though civilians as well as military personnel were sent to the hospital.) Thus any harm plaintiff's son incurred from a negligent rescue attempt by the Air Force would also be excluded from the MCA's coverage as "incident to service".