Marilyn MINNS, et al.

v.

UNITED STATES of America.

Kimberly WALSH, et al.

v.

UNITED STATES of America.

Denise BLAKE, et al.

v.

UNITED STATES of America.

Civil Nos. Y–96–2504 through Y–95–2506.

United States District Court,
D. Maryland.

Aug. 8, 1997.

H. Russell Smouse, Kenneth D. Pack, Law Offices of Peter G. Angelos, Baltimore, MD, for Plaintiffs.

James G. Touhey, Jr., Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I. *Facts*

The three consolidated cases pending before the Court were brought by the wives and minor children of servicemen involved in the Persian Gulf War. Plaintiffs allege that the minor children were afflicted with severe birth defects [1] caused by the exposure, without warning, of the servicemen to drugs,[2] pesticides,[3] and other unreasonably dangerous and toxic products used by the United States during the Persian Gulf War.

Plaintiffs seek damages of $20 million each from the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b), 2671–80, and the Military Claims Act ("MCA"), 10 U.S.C. §§ 2731–38, alleging that the United States negligently exposed the mothers and minor children to the hazardous combination of products without warning.

The United States filed a Motion to Dismiss for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The United States argues that Plaintiffs' FTCA claims are barred under *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), as well as the exceptions to the FTCA for discretionary functions, combat activities, and activities in a foreign country. 28 U.S.C. § 2680(a), (j), (k). With respect to the MCA

claims, the United States argues that the decision to award benefits under the MCA is not subject to judicial review. Finally, the United States challenges the venue of one of the consolidated cases.

Plaintiffs oppose the Motion to Dismiss. Having been fully briefed and a hearing held, the motion is ripe for resolution.

### II. *FTCA Claims*

A. Feres Doctrine.

■ The Federal Tort Claims Act ("FTCA") provides, with some exceptions, that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The Supreme Court has consistently held that FTCA does not waive the sovereign immunity of the United States "where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950); *see also United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987); *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

■ Three factors underlie the *Feres* doctrine: (1) the "distinctively federal" relationship between a soldier and his superiors; (2) the existence of statutory death and disability benefits that are available to service-members without the need for litigation or proof of fault by the military; and (3) the need to preserve military discipline and avoid judicial second-guessing of military decisions. *Feres,* 340 U.S. at 143, 71 S.Ct. at 157–58; *Johnson,* 481 U.S. at 688–91, 107 S.Ct. at 2067–69.

---

1. The birth defects suffered by the minor Plaintiffs include asymmetric development of the face and body, imperfect ear development and hearing loss, internal fistulas, absence of anus, kidney problems, bowel problems, and lung and respiratory problems. (Minns Compl. ¶ 8, Walsh Compl. § 8, Blake Compl. ¶ 8).

2. The drugs involved include pyridostigmine bromide, botulinum toxoid vaccine, gamma globulin, and anthrax vaccine.

3. The pesticides involved include chlorpyrifos or Dursban, diethyltoluamide or DEET, and prometherine.

Plaintiffs urge the Court to apply a balancing test that weighs each factor equally. Applying this test, Plaintiffs contend that the *Feres* doctrine should not bar their claims because (1) there is no distinctively federal relationship between civilian family members and the military; (2) there are no statutory benefits available to civilian family members; and (3) military discipline would not be seriously threatened by the provision of a warning to civilian family members.

The Supreme Court has stated that the factors underlying the *Feres* doctrine do not constitute a bright-line test and are not to be mechanically analyzed for their presence in an individual case. *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3043. Instead, courts are to look to whether the injuries complained of "arise out of or are in the course of activity incident to [military] service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159; *Hass v. United States*, 518 F.2d 1138, 1140–41 (4th Cir.1975). The Supreme Court has emphasized that the paramount goal of the *Feres* doctrine is to avoid the potential for a "civilian court to second-guess military decisions." *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3043; *Stencel Aero*, 431 U.S. at 673, 97 S.Ct. at 2058–59.

It is beyond dispute that the servicemen, who are husbands and fathers to Plaintiffs, may not maintain FTCA suits against the United States for any injuries they sustained from their exposure to drugs, pesticides, and other unreasonably dangerous and toxic products during their military service in the Persian Gulf War. The *Feres* doctrine prohibits such suits for injuries incident to military service because civilian courts would be allowed to second-guess the judgment of the military in exposing servicemen to drugs, pesticides, and other unreasonably dangerous and toxic products.

The *Feres* doctrine precludes not only suits for injuries sustained by servicemen themselves but also claims by third parties that have their genesis in an injury to a serviceman which was incident to his military service. For example, wrongful death suits by family members on behalf of military personnel who died incident to service are barred. *See Feres*, 340 U.S. at 136–37, 71

S.Ct. at 154–55 (involving suit brought by executrix). Similarly, claims by widows and children of servicemen for loss of consortium, companionship, and support are barred. *See, e.g., Kendrick v. United States*, 877 F.2d 1201, 1206–07 (4th Cir.1989) (rejecting claim by Army sergeant's son for loss of parental consortium); *Schoemer v. United States*, 59 F.3d 26, 30 n. 5 (5th Cir.1995) (barring claim by wife of National Guard member for loss of consortium), *cert. denied*, —— U.S. ——, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995); *DeFont v. United States*, 453 F.2d 1239, 1240 (1st Cir. 1972) (barring claim by widow and child of serviceman for loss of companionship and support), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972).

Several circuits have ruled that the *Feres* doctrine bars claims on behalf of the children of servicemen for birth defects, genetic damage, and cancer allegedly caused by the exposure of their parents to harmful agents during military service. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 201 (2d Cir.1987) (ruling that *Feres* doctrine barred claims by wives and children of servicemen exposed to Agent Orange during Vietnam War), *cert. denied sub nom., Adams v. United States*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988); *Hinkie v. United States*, 715 F.2d 96 (3d Cir.1983) (barring claims by widow and children alleging that miscarriage and birth defects were caused by exposure of serviceman to radiation during active duty based on *Feres* doctrine), *cert. denied*, 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984); *Mondelli v. United States*, 711 F.2d 567 (3d Cir. 1983) (barring suit by child of serviceman for genetic injuries allegedly caused by exposure of serviceman father to radiation on active duty under *Feres* doctrine), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984); *Lombard v. United States*, 690 F.2d 215 (D.C.Cir.1982) (holding that action by former serviceman and his family for injuries sustained as a result of serviceman's exposure to radiation during atomic bomb project were barred by *Feres*) *Scales v. United States*, 685 F.2d 970 (5th Cir.1982) (ruling that suit by minor child with congenital rubella syndrome allegedly due to negligent medical treatment, received by servicewoman mother during basic training was barred un-

der *Feres* doctrine), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983); *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981) (holding under *Feres* doctrine that claim by child of serviceman for genetic injuries caused by exposure of serviceman father to radiation while in service were barred), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *Harten v. Coons,* 502 F.2d 1363 (10th Cir.1974) (holding that *Feres* doctrine barred suit by serviceman and wife for costs of maintaining a child conceived after serviceman underwent elective vasectomy operation performed by military doctor), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975).

In the pending case, Plaintiffs argue that there is a split of authority among the federal courts and urge this Court to allow their claims to go forward. Specifically, Plaintiffs rely on Judge Weinstein's initial opinion in *In re Agent Orange Prod. Liab. Litig.,* 580 F.Supp. 1242 (E.D.N.Y.1984), the district court's decision in *Hinkie v. United States,* 524 F.Supp. 277 (E.D.Pa.1981), then-Judge Ginsburg's dissent in *Lombard v. United States,* 690 F.2d 215, 227–34 (D.C.Cir.1982), and the district court's initial decision in *C.R.S. v. United States,* 761 F.Supp. 665 (D.Minn.1991).

The difficulty with Plaintiffs' reliance on these cases is that they are at best marginally persuasive. First, Judge Weinstein's opinion in *Agent Orange* and the lower court's opinion in Hinkie were overturned on appeal. *In re Agent Orange Prod. Liab. Litig.* 818 F.2d 201 (2d Cir.1987), *cert. denied sub nom. Adams v. United States,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988); *Hinkie v. United States,* 715 F.2d 96 (3d Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984). Second, then-Judge Ginsburg's opinion in Lombard is merely a dissenting opinion. Finally, the decision of the United States District Court for the District of Minnesota in C.R.S.[4] is called into question by the fact that the court allowed the serviceman to proceed on his own claim in contradiction to the clear holding of Feres.

The persuasive value of the initial district court opinion in C.R.S. is further eroded by the fact that the district court later ruled that all of the claims against the United States were barred by the discretionary function exception to the FTCA. *C.R.S. v. United States,* 820 F.Supp. 449 (D.Minn.1993). The Eighth Circuit upheld the district court's grant of summary judgment in favor of the United States based on the discretionary function exception without considering the earlier ruling on the *Feres* doctrine. *C.R.S. v. United States,* 11 F.3d 791 (8th Cir.1993).

Plaintiffs also rely on *Romero v. United States,* 954 F.2d 223 (4th Cir.1992), in which the United States Court of Appeals for the Fourth Circuit held that claims by parents and child for inadequate prenatal care provided by government doctors to a mother in active duty military service were not barred by the *Feres* doctrine. The Fourth Circuit distinguished between an independent injury to a civilian and a derivative injury, which is a "civilian injury that derives from a service-related injury to a service person." *Id.* at 226. In *Romero,* the court concluded that the civilian child suffered an independent injury. "Joshua, the civilian child, was injured, not a military patient. Admittedly, in satisfying its duty of care to Joshua, proper prenatal treatment would have involved his mother's body. The sole purpose of the treatment, however, would have been directed at Joshua." *Id.* at 225. "Joshua's injury did not derive from an injury suffered by a service member, but was caused when the government breached an affirmative duty of care owed directly to him." *Id.* at 226. In reaching its decision, the Fourth Circuit emphasized that "[t]his suit will not require the court to second-guess a decision of the military necessary to the accomplishment of a military mission." *Id.* at 226.

The birth defects and other injuries suffered by Plaintiffs in the pending case are predicated on the exposure of servicemen to drugs, pesticides, and other unreasonably dangerous and toxic products during their

---

**4.** C.R.S. involved claims by a former member of the National Guard, his wife, and their child alleging that they contracted Acquired Immune Deficiency Syndrome ("AIDS") due to the negli-

gence of the United States in screening blood for human immunodeficiency virus ("HIV") and in failing to notify him that he received infected blood.

military service. No independent injury was involved.[5] The Plaintiffs did not have any treatment directed at them; the allegedly negligent acts or omissions of the government were directed at the servicemen and designed to advance the military's mission in the Persian Gulf War.

It is undisputed that any claims the servicemen might raise are barred by the *Feres* doctrine. It follows that the claims of the Plaintiffs which have their genesis in the barred claims of the servicemen are also barred by the *Feres* doctrine. If the claims of the Plaintiffs were allowed to go forward, this Court would be put in the intractable position of having to second-guess the decisions of the military in time of war. The Supreme Court has made clear that such second-guessing is to be avoided. *See Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042–43. Accordingly, this Court is without subject matter jurisdiction to hear Plaintiffs' claims based on the *Feres* doctrine.[6]

B. Discretionary Function Exception.

█ Congress specifically excluded from the waiver of sovereign immunity in the FTCA "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis added). The Supreme Court has recognized that this exception is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467

U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

█ In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the Supreme Court found that "the selection of the appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function.... It ... involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including, specifically the trade-off between greater safety and greater combat effectiveness." *Id.* at 511 [108 S.Ct. at 2518]. Similarly, the decision of whether to administer drugs or vaccines to military personnel as a precaution against the use of chemical and biological weapons by enemy forces during armed hostilities is a discretionary function.

█ Plaintiffs cannot avoid the bar of section 2680(a) by casting their claims as a failure by the government to issue warnings of increased health risks. In *Maas v. United States*, 94 F.3d 291 (7th Cir.1996), the Seventh Circuit ruled that the decision whether to issue a post-discharge warning about the increased health risks from low level exposure to atomic radiation *was* a discretionary function. Specifically, the Court stated:

In ascertaining the need for a warning and its cost, and in determining the group to be alerted, as well as the content and procedure for such notice, the government would balance safety with economic concerns. Deciding whether health risks justify the cost of a notification program, and balancing the cost and effectiveness of a type of warning, are discretionary decisions covered by § 2680(a).

---

**5.** The lack of physical manifestation of symptoms by the servicemen does not preclude the Court from finding that the Plaintiffs' injuries had their genesis in the exposure of the servicemen to allegedly dangerous products.

**6.** In reaching this decision, the Court is not without sympathy for the suffering of the minor Plaintiffs and their current lack of a remedy, but the proper venue for the Plaintiffs to seek recompense is not the courts but Congress. As the Third Circuit noted:

We sense the injustice to [the Plaintiff] of this result. Rarely does the law visit upon a child

the consequences of actions attributed to the parents. Nevertheless, the Supreme Court has construed the FTCA to subordinate the interests of children of service personnel to the exigencies of military discipline. Although these are delicate policy judgments, they are in the final analysis committed to Congress. Consequently, we conclude, with reluctance, that the claims of [the Plaintiff] are barred. *Mondelli v. United States*, 711 F.2d 567, 569–70 (3d Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984).

*Id.* at 297. *See also In re Consol. United States Atmospheric Testing Litig.,* 820 F.2d 982, 997 (9th Cir.1987) ("[A]ny decision whether to issue warnings to thousands of [military nuclear weapons] test participants of possibly life-threatening dangers [of radiation exposure] and to provide them with appropriate examinations and counseling calls for the exercise of judgment and discretion at high levels of government."), *cert. denied sub nom., Konizeski v. Livermore Lab.,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988).

Plaintiffs in this case also argue that the discretionary function exception is not applicable because the negligence of the government occurred at an "operational" level rather than a "planning" level. The Supreme Court has rejected this distinction. "[T]he distinction in *Dalehite v. United* States, 346 U.S. 15 [73 S.Ct. 956, 97 L.Ed. 1427] (1953), was merely [a] description of the level at which the challenged conduct occurred. There was no suggestion that the decisions made at an operational level could not also be based on policy." *United States v. Gaubert,* 499 U.S. 315, 326, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991).

Deciding whether to establish a warning program related to the potential risk of birth defects or other adverse health effects associated with exposure to drugs, pesticides, and other unreasonably dangerous and toxic products during military service in the Persian Gulf War is susceptible to policy analysis and judgment. Accordingly, the discretionary function exception in section 2680(a) bars this Court from exercising subject matter jurisdiction over Plaintiffs' claims including their claim that the military negligently failed to issue a warning.

### C. Combat Activities Exception.

Congress specifically excluded from the waiver of sovereign immunity in the FTCA "[a]ny claim arising out of the *combatant activities* of the military or naval forces ... during time of war." 28 U.S.C. § 2680(j) (emphasis added). This exception applies to claims arising out of the combatant activities of the military forces regardless of whether a formal declaration of war has been issued.

*Koohi v. United States,* 976 F.2d 1328, 1333–34 (9th Cir.1992), *cert. denied,* 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993). Therefore, even without a formal declaration of war, the Persian Gulf War constituted a "time of war" within the meaning of section 2680(j). *Id.* at 1334 ("[N]o one can doubt that a state of war existed when our armed forces marched first into Kuwait and then into Iraq.").

The United States argues that the term "combat activities" includes "not only physical violence, but activities both necessary to and in direct connection with actual hostilities." *Johnson v. United States,* 170 F.2d 767, 770 (9th Cir.1948) *cited in Koohi,* 976 F.2d at 1333 n. 5. In contrast, Plaintiffs argue that the term "[c]ombat activities has been defined to mean 'the actual engaging in the exercise of physical force.'" *Skeels v. United States,* 72 F.Supp. 372, 374 (W.D.La. 1947).

In light of the applicability of the *Feres* doctrine and the discretionary function exception to the pending case, this Court need not speculate on the parameters of the combatant activities exception. Accordingly, this Court expresses no opinion as to the proper definition of the term "combatant activities" or the applicability of the combatant activities exception.

### D. Foreign Country Exception.

Under the FTCA, the liability of the United States is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The waiver of sovereign immunity in the FTCA, however, does not extend to "[a]ny claim arising in a *foreign country.*" 28 U.S.C. § 2680(k) (emphasis added). A primary purpose of this exception is to avoid subjecting the United States to liability depending on the laws of a foreign power. *United States v. Spelar,* 338 U.S. 217, 221, 70 S.Ct. 10, 12, 94 L.Ed. 3 (1949).

The United States points out that even if the alleged negligence in this case had its operative effect in the United States when the children were conceived, the FTCA requires the Court to apply the law of the

place where the negligent acts occurred. *See Heller v. United States,* 776 F.2d 92, 95–96 (3d Cir.1985) (holding that foreign country exception barred wrongful death claim for negligent failure to diagnose cancer which occurred in Philippines even though decedent died in the United States), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). Therefore, to the extent the alleged negligence occurred outside the United States, the foreign country exception is applicable.

Plaintiffs counter that the ordering, quality control, and administration of the immunization and pesticide programs were based in the United States. Plaintiffs also contend that the continuing negligent failure of the United States to warn the wives and children of the servicemen is occurring in the United States and not a foreign country. Whereupon, they conclude that the foreign country exception should not be construed as an absolute bar to their claims.

At this stage in the litigation, the Court must assume that the decision by the United States to utilize certain drugs, pesticides, and other unreasonably dangerous and toxic products may have occurred in the United States. Moreover, any omission with respect to a warning to the wives and children of servicemen would have occurred in the United States. Accordingly, the foreign country exception does not bar all of Plaintiffs' claims and cannot provide an adequate basis for granting the United State's Motion to Dismiss.

### III. *MCA Claims*

The Military Claims Act ("MCA") provides that the secretaries of the military departments "may" settle claims against the United States for, *inter alia,* personal injury or death caused by a civilian officer or employee of their departments or a member of the Army, Navy, or Air Force acting within the scope of their employment, or otherwise incident to noncombat activities of their department. 10 U.S.C. § 2733. Such claim settlements are considered "final and conclusive" "[n]otwithstanding any other provision of law." 10 U.S.C. 2735.

While acknowledging that judicial review of MCA claims is "highly limited," Plaintiffs argue that courts may review questions of law such as whether a civilian's injuries were "incident to service." (Pls.' Mem. at 22). They rely exclusively on *Welch v. United States,* 446 F.Supp. 75 (D.Conn.1978), in which the district court held that it could review whether the plaintiff's death was "incident to service." *Id.* at 78. The district court in Welch found that the "final and conclusive" language of section 2735 was designed to prevent federal executive agencies and officials from reviewing settlements but not to prevent judicial review. *Id.*

The great weight of authority addressing the MCA, however, holds that absent a constitutional violation, the disallowance of an MCA claim is not subject to judicial review. *See, e.g., Collins v. United States,* 67 F.3d 284, 286–87 (Fed.Cir.1995); *Schneider v. United States,* 27 F.3d 1327, 1331–32 (8th Cir.1994), *cert. denied,* 513 U.S. 1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995); *Hata v. United States,* 23 F.3d 230, 233 (9th Cir.1994); *Rodrigue v. United States,* 968 F.2d 1430, 1434 (1st Cir.1992); *Poindexter v. United States,* 777 F.2d 231, 233–34 (5th Cir.1985); *Heller v. United States,* 776 F.2d 92, 98 (3d Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986); *Broadnax v. United States Dep't of the Army,* 710 F.2d 865, 867 (D.C.Cir.1983); *LaBash v. United States,* 668 F.2d 1153, 1155–56 (10th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). In support of this rule, the United States Court of Appeals for the Federal Circuit has stated:

> The claim … was a military matter that required military discretion and expertise in its disposition. We are convinced that when Congress included the finality provision in the Military Claims Act it intended that army claims would be considered and disposed of by the army and not by the courts.

*Collins,* 67 F.3d at 287–88. More to the point of Plaintiffs' argument, the United States Court of Appeals for the Eighth Circuit ruled that "[t]o interpret the section as precluding only further administrative review would be to render meaningless the phrase

'notwithstanding any other provision of law.'" *Schneider*, 27 F.3d at 1331.

Considering the weight of authority from the majority of federal circuits, the decision of the United States District Court for the District of Connecticut in *Welch v. United* States, 446 F.Supp. 75 (D.Conn.1978), must be considered an aberration and no longer good law. Accordingly, because there is no allegation of a constitutional violation in the pending case, the Court is without jurisdiction to review the decisions of the Secretaries of the Army and Navy as to Plaintiffs' claims for relief under the MCA.

### IV. *Venue*

The United States challenges whether the United States District Court for the District of Maryland is a proper venue for adjudicating the claims of Kimberly Walsh and her minor child. Because this Court is without subject matter jurisdiction to hear any of the claims in these consolidated cases, it need not address the venue issue. *See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F.Supp. 998, 1001 n. 7 (D.Md.1985) ("When a motion under Fed.R.Civ.P. 12 is 'based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and need not be determined.'") (quoting 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1350, at 209–20 (1969))

### V. *Conclusions*

In accordance with the foregoing discussion, the Court will grant the United States' Motion to Dismiss Plaintiffs' FTCA claims for lack of subject matter jurisdiction because of the *Feres* doctrine and the discretionary function exception. The Court will also grant the United States' Motion to Dismiss Plaintiffs' MCA claims because judicial review of the decisions of the Secretaries of the Army and Navy with respect to Plaintiffs' MCA claims is expressly precluded by section 2735 of the MCA. Finally, the Court will not address the venue issue raised by the United States because the Court does not have subject matter jurisdiction to hear any of Plaintiffs' claims.

### *ORDER*

In accordance with the attached Memorandum, it is this 8th day of August 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant's Motion to Dismiss for lack of subject matter jurisdiction BE, and the same IS, hereby GRANTED; and

2. That this action BE, and the same IS, hereby DISMISSED with prejudice; and

3. That a copy of this Memorandum and Order be mailed to counsel for the parties.